UNITED STATES of America,
Plaintiff,

v.

PHILIP MORRIS INCORPORATED,
et al., Defendants.

No. CIV. A. 99–2496(GK).

United States District Court,
District of Columbia.

July 27, 2001.

Sharon Y. Eubanks, U.S. Department of Justice, Washington, DC, for United States Department of Justice.

**2**

Peter Thomas Grossi, Jr., Jonathan Louis Stern, Arnold & Porter, Washington, DC, Cynthia S. Cecil, Hunton & Williams, Richmond, VA, Timothy M. Broas, Winston & Strawn, Washington, DC, Dan K. Webb, Bradley E. Lerman, Ricardo E. Ugarte, Kevin J. Narko, Luke A. Palese, Winston & Strawn, Chicago, IL, Herbert M. Wachtell, Ben M. Germana, Steven M. Barna, Jeffrey M. Wintner, Wachtell, Lipton, Rosen & Katz, New York City, C. Ian Anderson, Davis, Polk & Wardwell, New York City, Robert M. Rader, Debevoise & Plimpton, New York City, for Philip Morris Inc.

Robert Francis McDermott, Jr., Jonathan M. Redgrave, Jones, Day Reavis & Pogue, Washington, DC, Robert C. Weber, Paul Crist, Jones, Day, Reavis & Pogue, Cleveland, OH, Nicholas N. Nierengarten, Gray, Plant, Mooty, Mooty & Bennett, PA, Minneapolis, MN, Robert M. Rader, Debevoise & Plimpton, New York City, Ivan C. Smith, Jone, Day, Reavis & Pogue, Columbus, OH, for R.J. Reynolds Tobacco Co.

William Charles Hendricks, III, Andrew McCormack, King & Spalding, Washington, DC, David M. Bernick, Kirkland & Ellis, Chicago, IL, Kenneth N. Bass, Jason Beckerman, David Mendelson, David Sullivan, Kirkland & Ellis, Washington, DC, Stephen R. Patton, Kirkland & Ellis, Chicago, IL, Douglas G. Smith, Michelle H. Browdy, Chicago, IL, for Brown & Williamson Tobacco Corp.

*MEMORANDUM OPINION–
ORDER # 72*

KESSLER, District Judge.

## I. Introduction

The United States of America ("Plaintiff" or "the Government") brought suit against nine tobacco companies and two related entities (collectively "Defendants")[1] to recover health care expenditures the Government has paid for or will pay for to treat tobacco-related injuries allegedly caused by Defendants' tortious conduct, and to disgorge the proceeds of that unlawful conduct.

The Court previously dismissed Count One (the Medical Care Recovery Act or "MCRA" Count) and Count Two (the Medicare Secondary Payer provisions or "MSP" Count) of the Government's original complaint, *United States v. Philip Morris*, 116 F.Supp.2d 131 (D.D.C.2000) ("*Philip Morris*" or the "Memorandum Opinion"); dismissed Defendant B.A.T. Industries p.l.c. ("BAT Ind.") for lack of personal jurisdiction, *United States v. Philip Morris*, 116 F.Supp.2d 116 (D.D.C.2000); and denied the Government's request to reconsider the dismissal of BAT Ind. *United States v. Philip Morris*, 130 F.Supp.2d 96 (D.D.C.2001).

The Government subsequently filed an amended complaint, which added a revised Count Two (the MSP Count).[2] Defendants moved to dismiss that Count pursuant to Fed.R.Civ.P. 12(b)(6) for failure to

---

1. The initial eleven Defendants were: Philip Morris, Inc., R.J. Reynolds Tobacco Co., Brown & Williamson Tobacco Co., Lorillard Tobacco Company, The Liggett Group, Inc., American Tobacco Co., Philip Morris Cos., B.A.T. Industries p.l.c. ("BAT Ind."), British American Tobacco (Investments) Ltd., The Council for Tobacco Research—U.S.A., Inc., and The Tobacco Institute, Inc. BAT Ind. has since been dismissed from this action.

2. Prior to filing its amended complaint, the Government filed a Motion to Limit Court's Order Dismissing Count One of Complaint to Claims for Payments Under Medicare and FEHBA. This Motion is disposed of in a separate Memorandum Opinion, to be issued this same day.

state a claim.[3] Upon consideration of Defendants' Motion, the Opposition, the Reply, and the entire record herein, Defendants' Motion to Dismiss Count Two of the Amended Complaint [# 272] is granted. The Government shall not be permitted to further amend its complaint with respect to the MSP Count.

Neither this ruling nor the companion ruling on Defendants' Motion to Amend changes the current posture of the case. The parties are proceeding with extensive discovery and are preparing for trial.

## II. Standard of Review

■■■ The legal standard for judging the adequacy of a complaint is well established. A "complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Davis v. Monroe County Bd. of Educ.*, 526 U.S. 629, 654, 119 S.Ct. 1661, 143 L.Ed.2d 839 (1999). At the motion to dismiss stage, "the only relevant factual allegations are the plaintiffs'," and they must be presumed to be true. *Ramirez de Arellano v. Weinberger*, 745 F.2d 1500, 1506 (D.C.Cir.1984), *vacated on other grounds*, 471 U.S. 1113, 105 S.Ct. 2353, 86 L.Ed.2d 255 (1985); *Shear v. National Rifle Ass'n of Am.*, 606 F.2d 1251, 1253 (D.C.Cir.1979).

■■■ However, a court may not "accept legal conclusions cast in the form of factual allegations" or "inferences drawn by plaintiffs if such inferences are unsupported by the facts set out in the complaint." *Western Assocs. Ltd. Partnership v. Market Square Assocs.*, 235 F.3d 629, 634 (D.C.Cir.2001) (citing *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1276 (D.C.Cir.1994)) (internal quotations omitted); *see also Papasan v. Allain*, 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986) (holding that courts "are not bound to accept as true a legal conclusion couched as a factual allegation").

## III. Analysis

### A. Overview of the Medicare Secondary Payer Provisions

The Medicare Secondary Payer provisions ("MSP"), a series of amendments to Medicare enacted in 1980 and further amended thereafter,[4] provide the Government with statutory authority to obtain reimbursement for certain Medicare expenditures. MSP essentially makes Medicare a "secondary" payer where another entity is required to pay under a "primary plan" for an individual's health care. *See* 42 U.S.C. § 1395y(b)(2).

Under certain circumstances, the Government may make a conditional payment "with respect to [an] item or service" provided for an injured Medicare recipient and then, if not reimbursed, may "bring an action against [the] entity which is required or responsible (directly, as a third-party administrator, or otherwise) to make payment with respect to such item or service (or any portion thereof) *under a primary plan . . .*" 42 U.S.C. § 1395y(b)(2)(A) and (B)(ii) (emphasis added).[5]

---

3. The Motion was filed on behalf of all current Defendants except for Liggett Group, Inc., which timely joined the Motion.

4. Pub.L. No. 97–35, § 988, 95 Stat. 604 (1981).

5. In addition to bringing suit against the entity "which is required or responsible . . . to make payment . . . under a primary plan," the Government may also pursue a secondary entity, such as a "physician or provider," which has received payment from the primary ("required or responsible") entity. 42 U.S.C.

A "primary plan" is defined in the statute as "a group health plan or large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (*including a self-insured plan*) . . ." 42 U.S.C. § 1395y(b)(2)(A) (emphasis added). As stated in the Memorandum Opinion, it is this last phrase ("self-insured plan") from which the Government draws its legal support for the MSP Count.

**B. Whether the Amended MSP Count States a Claim**

■ In dismissing the MSP Count as alleged in the original complaint, the Court explained that "[a]lthough MSP . . . allows the Government to bring suit against non-insurance entities required to pay for health care costs under a 'self-insured plan,' the Government's complaint contains no allegation that Defendants have at any time maintained a 'self-insured plan,' as that term is defined by MSP and the relevant regulations." *Philip Morris*, 116 F.Supp.2d at 135.[6] The Court also determined that the Government was attempting to improperly use the MSP statute as "an across-the-board procedural vehicle for suing tortfeasors." *Id.*

In response, and with the intention of revitalizing its MSP claim, the Government amended Count Two of its complaint, adding four paragraphs and nine pages thereto. The amended complaint contains a number of new allegations, including that:

● "[i]n the first half of the 1900's, Defendants apparently chose a plan of insurance under which they were entirely self–insured against liability arising from their manufacture, sale, and promotion of tobacco products." Am. Compl. ¶ 167a.

● certain research reports on the dangers of tobacco use published in the 1940's and 1950's "prompted Defendants to explore the possibility of obtaining liability insurance coverage for the harms caused by tobacco products." Am. Compl. ¶ 167b.

● in 1957, an individual with "Corporate Insurance Services, Inc." "predicted" that the tobacco industry would need "catastrophe protection" "in the next ten year period." Am. Compl. ¶ 167c, e.

● "at least some Defendants resisted purchasing insurance coverage through the early 1960's," and one Defendant (R.J. Reynolds Tobacco Co.) wrote to a shareholder in 1963 that it has "never carried [products liability] insurance but [has] chosen to be self-insurers in this field." Am. Compl. ¶ 167f.

● "in the mid–1960's, Defendants obtained, in earnest, insurance policies that explicitly insured against the risks of injury from their tobacco products." Am. Compl. ¶ 167h.

● Defendants discussed "[d]eveloping a plan of insurance and self-insurance" and at some point in the past "had considered an industry insurance company" but "declined to go that route." Am. Compl. ¶ 167k.

Relying on these new allegations, the Government concludes in its amended complaint that Defendants "recognized the

§ 1395y(b)(2)(B)(ii). However, since this provision is not relevant in this case, its mention will be hereafter omitted.

**6.** Technically, the pertinent statutory question on which the MSP Count turns, for purposes of this Opinion, is whether Defendants "are required or responsible" "to make payment" "under" "a self-insured plan." 42 U.S.C. § 1395y(b)(2)(A) and (B)(ii). To avoid repeatedly stating this somewhat contorted question (which is itself an abbreviated version of the statutory language), this Opinion will instead discuss the issue in terms of whether Defendants "maintain a self-insured plan."

risks associated with their manufacture, sale, and promotion of tobacco products," "considered the possibility of insuring against such risks through contract, agreement, or arrangement with one another, and[/]or, third party insurers," and "made the business decision" to "obtain partial third party insurance" and/or to "self-insure, in whole or in part," against those risks. Am. Compl. ¶ 1671.

In contrast to the original MSP Count, the amended count does assert that Defendants have maintained "plans of self-insurance"—an allegation which is necessary, at a bare minimum, to state an MSP claim.[7] See Philip Morris, 116 F.Supp.2d at 145–46 (stating that original complaint "[did] not allege, in even the most conclusory fashion, the existence of any 'primary plan' under which Defendants pay health care costs" and that even if it had, "it fail[ed] to allege, or even suggest, that Defendants specifically maintain any form of self-insured plan") (emphasis in original). Defendants, however, argue that the Government is once again attempting to use MSP as a means of proceeding against them as tortfeasors, rather than as insurers, and that the allegations contained in the amended complaint are still insufficient to state a claim.

MSP liability attaches only to an entity that is "required or responsible" to pay under a "primary plan." See 42 U.S.C. § 1395y(b)(2). MSP defines the term "primary plan" as "a group health plan[,] large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance" 42 U.S.C. § 1395y(b)(2)(A). As is apparent, the phrase "self-insured plan" is a limited type of "primary plan," and of the eight types of plans named in the statute, it is the only one to be relegated to a parenthetical phrase. Perhaps not surprisingly, the statute has apparently never been successfully used to pursue a noninsurance entity.[8] Indeed, "[c]ourts have uniformly recognized that the statute's clear purpose was to grant the Government a right to recover Medicare costs from insurance entities." Philip Morris, 116 F.Supp.2d at 146 n. 22 (citing cases).

On the other hand, there is certainly no indication that the phrase "self-insured plan" was meant to be, or should be viewed as, superfluous. Under the appropriate circumstances, the statutory inclusion of that phrase will permit the Government to pursue noninsurance entities under MSP. See id. at 146 (noting that "the typical factual scenario" is that MSP is used to "seek recovery from entities that are unquestionably providers of insurance"). To the extent that the literal language of certain decisions seems to suggest otherwise, see, e.g., Health Ins. Ass'n of Am. v. Shalala, 23 F.3d 412, 427 n. * (D.C.Cir.1994) ("[T]he MSP statute plainly intends to allow recovery only from an insurer.") (Henderson, J., concurring), it is apparent that those courts simply were not faced with a factual sce-

---

**7.** In the only passage where it uses the words "self-insured" and "plan" together, the amended complaint describes the terms of a products liability policy purchased by one Defendant, and then in the next sub-paragraph asserts that "[o]ther Defendants had similar plans of insurance and self-insurance." Am. Compl. ¶ 167g-i. Viewing the complaint in its most favorable light, the amended MSP Count strongly implies, though it might not clearly articulate, that Defendants maintain a "self-insured plan," so as to subject them to liability under the statute.

**8.** The Government has identified only one case in which the statute has been used in this way, and in that case, the plaintiff (a private entity) has not (yet) been successful. See Philip Morris, 116 F.Supp.2d at 146 n. 22.

nario in which the term "self-insured plan" was analytically relevant.[9]

To explicate the meaning of the term "self-insured plan," as it is used in MSP, it is necessary to look at various interpretative sources, particularly the one which both parties agree is highly relevant: the regulations and comments issued by the Health Care Financing Administration ("HCFA") which administers Medicare. HCFA has concluded that "the mere absence of insurance purchased from a carrier does not necessarily constitute a 'plan' of self-insurance." Medicare as Secondary Payer and Medicare Recovery Against Third Parties, 54 Fed.Reg. 41716, 417272 (Oct. 11, 1989). Rather, HCFA regulations, when considered in tandem, define the term "self-insured plan" as an "arrangement, oral or written . . . to provide health benefits or medical care or [to] assume legal liability for injury or illness" under which an entity "carries its own risk instead of taking out insurance with a carrier." *See* 42 C.F.R. §§ 411.21 (defining the term "plan") and 411.50(b) (defining the term "self-insured plan").

The requirements for such an "arrangement" have been spelled out in various cases and treatises. HCFA itself has ruled that "[o]ne of the conditions for a self-insurance program is that the provider must establish a fund with an independent fiduciary which is documented by a written agreement that includes legal responsibilities and obligations required by State laws." *Mt. Diablo Med. Ctr. v. Blue Cross & Blue Shield Ass'n,* Dec. No. 96–D40, 1996 WL 862610, at *6 (P.R.R.B. July 1, 1996). One of the leading treatises on insurance law has adopted the same basic approach:

> To meet the conceptual definition of self-insurance, an entity would have to engage in the same sorts of underwriting procedures that insurance companies employ; estimating likely losses during the period, setting up a mechanism for creating sufficient reserves to meet those losses as they occur, and, usually, arranging for commercial insurance for losses in excess of some stated amount.

1 Couch on Insurance 3d 1:1 (1997), quoted approvingly in *In re Diet Drugs Prods. Liab. Litig.,* No. MDL 1203, C.A. No. 99–20593, 2001 WL 283163, at *10 (E.D.Pa. Mar.21, 2001). "It is implicit in the term, 'self-insurer,' that such person maintains a fund, or a reserve, to cover possible losses, from which it pays out valid claims, and that the self-insurer have a procedure for considering such claims and for managing that reserve." *Alderson v. Insurance Co. of N. Am.,* 223 Cal.App.3d 397, 273 Cal. Rptr. 7, 13 (1990).

Clearly, the amended complaint does not allege any of the requirements delineated above. It does not allege the existence of reserves or procedures for establishing and calculating them; of claims-handling procedures; of a fiduciary (or other independent body) to perform these tasks; or of written documents allocating legal responsibilities and obligations. Conceding that such requirements must ultimately be proven at trial to establish MSP liability, the Government takes the position that they need not be included in the complaint. *See* Govt's Mem. of Points and Auth. in Supp. of its Opp'n to Defs.' Mot. to Dismiss Count Two of Am. Compl. ("Gov't Opp'n") at 19.

What, then, does the Government assert must be alleged to state an MSP claim? At an early point in its brief, the Government appears to argue that it need only allege that Defendants are "required or

---

9. For example, in *Health Ins. Ass'n.* the issue was whether HCFA exceeded its statutory authority in promulgating certain MSP-related regulations.

responsible" to pay for an injured party's medical expenses under a "primary plan." *See* Govt's Opp'n at 3 ("To plead an MSP claim, the United States need only allege. . . ."). To the extent that this is the Government's argument, however, it has already been squarely rejected and warrants no further response. *See Philip Morris,* 116 F.Supp.2d at 145–46 (acknowledging that the original complaint alleged that Defendants are "required or responsible . . . to make payment," and holding that this allegation was insufficient to state a claim).

In another part of its brief, the Government contends that because Defendants are "sophisticated corporations, undeniably aware of the liability risks posed by their products, making business decisions concerning insurance against such risks," their choice to retain certain amounts of risk, and not others, should be treated as a decision to self-insure, thus subjecting them to MSP's reach. *See* Govt's Opp'n at 6, 4; Compl. ¶ 167i-j, *l* (summarized at pages 4–5 *supra*). Yet, the Government never advances any reason why a distinction should be made under MSP between "sophisticated corporations" and other parties, and how such a dichotomy could hold up in practice. Indeed, in responding to whether its understanding of the term "self-insured" would (or should) encompass, for example, a homeowner who had not purchased homeowners' insurance, or a sufficient amount thereof, the Government takes no position and simply suggests that the issue not be addressed.[10]

Finally, the Government argues that, even if MSP liability does necessitate the formal arrangements spelled out in *Mt. Diablo Med. Ctr.,* Couch on Insurance, and *Alderson,* it need only be able to prove

their existence *after* discovery, which it intends to do. It states: "The United States fully expects that, at the appropriate time, it will be capable of presenting evidence showing the Defendants have utilized formal arrangements by which they undertook to set aside funds, and a formal procedure for processing claims." *Id.* Of course, this begs the question, namely, why, if the Government "expects" to ultimately produce such evidence, it does not make the necessary allegations in its complaint.

Having fully considered the Government's position on what a plaintiff needs to allege in its complaint to make out an MSP claim, the Court concludes that such a theory cannot withstand serious scrutiny and must be rejected. Its logical implication is that any entity with a risk of legal liability which chooses to retain any portion of that risk, no matter how small, may be pursued under MSP on the ground that it is a "self-insured plan." The Government attempts to evade the far-ranging implications of its theory of MSP liability, contending that "such questions can be left for another day." Govt's Opp'n at 7. However, a party's theory of statutory liability, and the implications that flow therefrom, are extremely important in interpreting the statute. *See Dowling v. United States,* 473 U.S. 207, 226, 105 S.Ct. 3127, 87 L.Ed.2d 152 (1985) (holding that the "broad consequences of the Government's theory" of statutory liability "provide a final and dispositive factor against reading [the statute] in the manner suggested"). The practical effects of the Government's conception of MSP liability would transform that statute, meant primarily for use against insurers, *see Philip Morris,* 116 F.Supp.2d at 146 n. 22, into the very

---

10. The Government does assert that the present case "is vastly different than a suit against an individual with homeowner's insurance," but it does not follow that assertion with any analysis or explanation. Govt's Opp'n at 6.

"across-the-board procedural vehicle for suing tortfeasors," which this Court has already declared impermissible. *Id.* at 135. Significantly, the Government is unable to provide any logically consistent way in which this outcome could be averted.

The Government makes one final argument that must be addressed. It contends that, "should discovery reveal" that Defendants obtained insurance policies but elected to "pay any liability out of pocket" (*i.e.,* to make "liability insurance payment[s]" as defined by 42 C.F.R. § 411.50(b)) rather than "claiming against available insurance coverage," they would also be liable under MSP. *See* Govt's Opp'n at 17–18. However, even assuming this theory has merit, nowhere in its amended complaint does the Government allege that Defendants elected to make such payments, or that by making such payments, they exposed themselves to MSP liability. Further, neither in its brief nor in its complaint does the Government describe the actual circumstances in which "a tortfeasor that elects to carry its own risk of liability in a lawsuit rather than to claim against its insurance [would], by that election, make itself subject to an MSP claim." *Id.*

Accordingly, for the reasons stated, the MSP Count contained in the amended complaint will be **dismissed.**[11]

## IV. Conclusion

For the reasons stated, Defendants' Motion to Dismiss Count Two of the Amended Complaint is granted and Count Two (the Medicare Secondary Payer provisions or "MSP" Count) is dismissed with prejudice. The Government shall not be permitted to bring a cause of action pursuant to MSP.

11. The Government is commended for bringing to the Court's attention a decision, *Thompson v. Goetzmann,* No. 00–CV–2174,

An appropriate Order will accompany this Opinion.

### ORDER # 72

This matter is before the Court on Defendants' Motion to Dismiss Count Two of the Amended Complaint [## 272, 277]. Upon consideration of the Motion, the Opposition, the Reply, and the entire record herein, for the reasons discussed in the accompanying Memorandum Opinion, it is this—day of July 2001

ORDERED, that Defendants' Motion [## 272, 277] is granted; it is further

ORDERED, that Count Two of the Amended Complaint is dismissed with prejudice.

2001 WL 771012 (N.D.Tex. July 3, 2001), which is adverse to the Government's position. *See* Govt's Praecipe of July 19, 2001.