**MASON, et al.**

v.

**AMERICAN TOBACCO CO., et al.**

**No. 00–CV–04442.**

United States District Court, E.D. New York.

July 25, 2002.

The Cuneo Law Group by Jonathon W. Cuneo, Washington, DC, Hutton & Hutton

by Mark B. Hutton, Derek S. Casey, Chan P. Townsley, Wichita, KS, Richardson & Ward by Gary .Richardson, Tulsa, OK, Cooper & Kirk by Charles J. Cooper, Robert J. Cynkar, Victor J. Wolski, Derek L. Shaffer, Washington, DC, Ronald D. Wells by Ronald D. Wells, Dallas, TX, for Plaintiff Mason, et al.

Sedgwick, Detert, Moran & Arnold, Esq. by Kevin J. Dunne, Esq., Eric M. Kraus, Esq., New York City, Kirkland & Ellis, Esqs. by Marjorie P. Lindblom, Esq., David Bernick, Esq., Andrew R. McGaan, Esq., Deirdre A. Fox, Esq., New York City, Goodwin, Proctor & Hoar, LLP by U. Gwyn Williams, Esq., Boston, MA, for Defendant Brown & Williamson.

Jones, Day, Reavis & Pogue by Harold Keith Gordon, Byron G. Stier, George Kostolampros, New York City, Jones, Day, Reavis & Pogue by Theodore M. Grossman, Hugh R. Witing, Mark A. Belasic, Cleveland, OH, Jones, Day, Reavis .& Pogue by Robert H. Klonoff, Washington, DC, Jones, Day, Reavis & Pogue by Jerome R. Doak, Margaret I. Lyle, Dallas, TX, Womble Carlyle Sandridge & Rice by Ursula M. Henninger, Esq., Winston–Salem, NC, for Defendant R.J. Reynolds.

Greenberg Traurig, LLP by Alan Mansfield, Esq., Robert J. Kirshenberg, Esq., Stephen L. Saxl, Esq., New York City, Shook, Hardy & Bacon, LLP by William L. Allinder, Esq., Lori Connors McGroder, Esq., Kansas City, MO, for Defendant Lorillard Tobacco.

Arnold & Porter by Peter Bleakley, Esq, Murray R. Garnick, Esq., David S. Eggert, Eric Suter, Washington, DC, Dechert Price & Rhoads by Peter L. Critchell, Esq., New York City, Collier, Shannon, Rill & Scott by John B. Williams, Esq., Thomas W. Mitchell, Esq., Washington, DC, Goodwin, Proctor & Hoar by Kenneth J. Parsigian, Esq., Paul E. Namser, Esq., Boston, MA, for Defendant Philip Morris.

Skadden Arps Slate Meagher & Flom by Arthur H. Aizley, Esq., Eric S. Sarner, Esq., New York City, for Defendant U.S. Tobacco and American Tobacco.

Kasowitz Benson Torres & Friedman by Leonard A. Feiwus, Esq., New York City, for Defendant Liggett and Brooke Group.

## MEMORANDUM ORDER AND JUDGMENT

WEINSTEIN, Senior District Judge.

I. Introduction

Plaintiffs bring this class action pursuant to the private cause of action provision of the Medicare as Secondary Payer ("MSP") statute. 42 U.S.C. § 1395y(b)(3)(A) (2002). They seek certification of the following proposed class:

Individuals who have received or are receiving health care services for the treatment of tobacco-related illnesses, including, but not limited to, lung cancer, heart disease, emphysema, and chronic obstructive pulmonary disease, which services have been paid for, or are being paid for, by Medicare.

Defendants oppose certification and move to dismiss.

The motion of certification is denied and the case is dismissed. Viability of the action and certification are intertwined and need to be considered together. *See* W. Gordon Dobie, Assuming the Factual Truthfulness of Plaintiffs' Complaint and the Class Certification Decision, 71 U.S.L.W.2019 (2002); Karin S. Schwarz et al., *Notes From the Cave: Some Problems in Dealing with Class Action Settlements,* 163 F.R.D. 369, 382 (1995); *Szabo v. Bridgeport Machines Inc.,* 249 F.3d 672, 674 (7th Cir.) (Easterbrook, J.), *cert. denied,* —— U.S. ——, 122 S.Ct. 348, 151 L.Ed.2d 263 (Oct. 9, 2001).

The complaint is based upon an imaginative but inappropriate interpretation of an ambiguous statute. As construed by plaintiffs it would permit a *qui-tam* type of individual action where the entire judgement for double the medicare payments would be split between the government and the named plaintiffs; it would not support an action masquerading as one for a class. Plaintiffs' attempts to limit the statute's interpretation to cover only large corporate defendants is a limiting construction having no support in the statutory language or legislative history. As sought to be applied by plaintiffs the statute would distort the federal-state substantive tort balance by creating a harsh (double recovery) shadow federal tort action in any case where medicare payments were made on behalf of any person injured by the delict. The language of the provision, while confusing, does not support plaintiffs' interpretation.

This action is quite different from a lien that Medicare might have after recovery by a plaintiff who was a medicare beneficiary and was injured by a mass tort. "Medicare has a right to intervene in the action against the tortfeasor and can bring or join any action against the responsible primary payor. Medicare can also pursue third parties, including attorneys, who receive payments of any sums which should be reimbursed to Medicare, a fact that would cause any prudent personal injury attorney to involve Medicare before any disbursement of settlement proceeds is made." *Denekas v. Shalala,* 943 F.Supp. 1073, 1080 (S.D.Iowa 1996) (internal quotations omitted); *see also* 42 U.S.C. § 2651(a) (2002). The government has declined to intervene directly in this case, instead bringing all claims before Judge Kessler in the District Court for the District of Columbia. Despite the decision not to intervene directly, a representative of the government argued forcefully on plaintiffs' behalf at the hearing of July 2, 2002. *See* Transcript at 40–50, 55–58.

Should the court of appeals find that a valid cause of action has been stated on behalf of a class, a viable class action could be accommodated and certified under Rule 23 of the Federal Rules of Civil Procedure. Denial of certification and dismissal is not based upon any failure to come within the procedural ambit of Rule 23.

## II. History of the MSP Provision

From 1965 to 1980 Medicare was the primary payer of health care costs for individuals over the age of 65. *United States v. Blue Cross Blue Shield of Michigan*, 859 F.Supp. 283, 286 (E.D.Mich.1994). The Medicare Secondary Payer Act of 1980 sought to lower Medicare's expenses by making Medicare the secondary payer, after any other entity contractually obligated to pay for an individual's primary health care. *HIAA v. Shalala*, 23 F.3d 412, 414 (D.C.Cir.1994).

Pursuant to the statute, Medicare is to be the secondary payer when:

[P]ayment has been made, or can reasonably be expected to be made promptly (as determined in accordance with regulations) under a workman's compensation law or plan of the United States or a State or under an automobile or liability insurance policy or plan (including a self-insured plan) or under no fault insurance.

42 U.S.C. § 1395 y(b)(2)(A)(ii) (2002).

In such cases, the primary insurer is expected to pay for the services. If an entity responsible for payment fails to do so, the government can sue that entity for reimbursement of payments Medicare made. 42 U.S.C. 1395y(b)(2)(B)(ii) (2002). In addition, the MSP statute creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary insurers to bring actions to enforce Medicare's rights. 42 U.S.C. 1395y(b)(3)(A) (2002). In such private suits, both Medicare and the private plaintiff can recover 100% of any amount that should have been paid by the primary obligor. *Id.* The provision reads:

Private cause of action. There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) in accordance with [the MSP statute].

42 U.S.C. § 1395y(b)(3)(A) (2002).

Plaintiffs seek to recover under this statutorily authorized private cause of action.

## III. Statutory Interpretation

■ The words of the statute provide the initial basis for determining its meaning. *Robinson v. Shell Oil Co.*, 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). "[W]hen a general word or phrase follows a list of specific persons or things, the general word or phrase will be interpreted to include only persons or things of the same type as those listed." *See* Black's Law Dictionary 535 (7th ed.1999). *See also United States v. Abozid*, 257 F.3d 191, 198 (2d. Cir.2001). The list of responsible entities in 42 U.S.C. 1395y(b)(2)(A)(ii) primarily includes various types of insurance companies: "a group health plan or large group health plan, ... a workmen's compensation law or plan, an automobile or liability insurance policy or plan (including a self-insured plan) or no fault insurance ...." 42 U.S.C. § 1395y(b)(2)(A) (2002). The logical inference is that a "self-insured plan" as included in that list means an entity that has assumed a posture similar to that of an insurance company. Defendants are not insurance companies and they have no apparent agreement or policy to be self-insured plans covering general tort claims.

Other courts have repeatedly suggested rejection of claims that tortfeasors similar to defendants are "self-insured plans" under the meaning of the MSP statute. *See United States v. Philip Morris, Inc.,* 116 F.Supp.2d 131, 135 (D.D.C.2000); *United States v. Philip Morris Inc.,* 156 F.Supp.2d 1 (D.D.C.2001); *In re Diet Drugs (Phentermine, Fenfluramine, Dexfenfluramine) Prods. Liab. Litig.,* Civ. A. 99–20593, 2001 WL 283163 (E.D.Pa. March 21, 2001); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 202 F.R.D. 154 (E.D.Pa.2001); *In re Silicone Gel Breast Implants Prods. Liab. Litig.,* 174 F.Supp.2d 1242 (N.D.Ala.2001); *Thompson v. Goetzmann,* No. Civ. A. 3:00–CV–21774, 2001 WL 771012 (N.D.Tex. July 3, 2001); *In re Dow Corning Corp.,* 250 B.R. 298, 338 n. 24 (Bankr.E.D.Mich.2000).

The Health Care Financing Administration ("HCFA"), which administers Medicare, defines plan as "any arrangement, oral or written, by one or more entities, to provide health benefits or medical care or assume legal liability for injury or illness." 42 F.R.C. 411.21 (2002). HCFA defines a self-insured plan as "a plan under which an individual, or private or governmental entity, carries its own risk instead of taking out insurance with a carrier." 42 F.R.C. 411.50 (2002). HCFA has ruled that "the mere absence of insurance purchased from a carrier does not necessarily constitute a 'plan' of self-insurance." *Medicare as Secondary Payer and Medicare Recovery Against Third Parties,* 54 Fed.Reg. 41716, 41727 (Oct. 11, 1989).

Defendants' status as accused tortfeasors, standing alone, does not convert them under the statute into primary plans or self-insured plans for Medicare beneficiaries injured by using their products. As Judge Kessler (dismissing similar claims brought by the government against similar defendants) put it, one requirement for an entity to be a self-insured plan is

"the provider must establish a fund with an independent fiduciary which is documented by a written agreement that includes legal responsibilities and obligations required by State laws" for payment of medical expenses of those injured by its products. *Mt. Diablo Med. Ctr. v. Blue Cross & Blue Shield Ass'n,* Dec. No. 96–D40, 1996 WL 862610 at *6 (P.R.R.B. July 1, 1996) *quoted in United States v. Philip Morris, Inc.,* 156 F.Supp.2d 1, 6 (D.D.C. 2001). Defendants have no such plan in place. Conceivably they might have a self-insured plan covered by the statute to protect their own workers against medical costs or to cover persons injured by their own vehicles, but that is an entirely different category of self insurance from the kind of coverage against mass torts upon which plaintiffs predicate this suit.

█ Plaintiffs seek to narrow the breathtaking scope of the statute as they interpret it by limiting it to large corporations. *See* Plaintiffs' Memorandum of Points and Authorities in Support of their Motion for Class Certification of Count 1 at 51 (April 1, 2002). As corporations (whose corporate structure is designed to protect against individual stockholder liability), plaintiffs argue, the defendants became self-insured plans. There is no support in the statute for this purported limitation. Similar arguments have been rejected by other courts. *United States v. Philip Morris,* 156 F.Supp.2d at 7–8.

The law assumes that legislatures are "reasonable persons pursuing reasonable purposes reasonably." 1 Henry M. Hart, Jr. & Albert M. Sachs, *The Legal Process: Basic Problems in the Making and Application of Law* 1415 (tent. ed.1958) *quoted in* Eva H. Hanks et. al., *Elements of Law* 256 (1994). If Congress designed the provision so that corporate structure or wealth characterized a self-insured plan,

more specific statutory language would be expected.

Legislative history is an appropriate tool in interpreting ambiguous statutes; the order of changes to legislation can provide insight into the intention of Congress. *See e.g. Paulina v. United States,* 11 U.S. (7 Cranch) 52, 61, 3 L.Ed. 266 (1812) ("we consider the laws in the order in which they were passed."). The legislative history of this statute provides no indication of a Congressional design to include an enormous group of potential tortfeasors as primary payors subject to double recovery under the statute. The legislative history of the MSP Statute is cryptic and uninformative on the interpretive question now raised. The MSP was added in the Medicare Amendments of 1980 to cover automobile insurance because of the widespread state requirement of insurance against accident injuries in this specialized tort field. The House report for the pertinent section reads:

> MEDICARE PAYMENT LIABILITY SECONDARY IN CERTAIN AUTOMOBILE INSURANCE CASES
>
> Under Title VIII, medicare will have residual rather than primary liability for the payment of services required by a beneficiary as a result of an injury or illness sustained in an auto accident where payment for the provision of such services can also be made under an *automobile insurance policy.* Under this provision, it is expected that medicare will ordinarily pay for the beneficiary's care in the usual manner and then seek reimbursement from the private insurance carrier after, and to the extent that, such carrier's liability under the private policy for the services has been determined.

H.R. REP. No. 96–1167, at 389 (1980), *reprinted in* 1980 U.S.C.C.A.N. 4726, 5752 (emphasis added).

The section was subsequently changed in both the Senate amendment and in the joint conference agreement as indicated by the report:

> *Senate amendment.*-The Senate amendment contains a similar provision except that (a) medicare would be the secondary payer in any case where care can be paid for under any liability insurance policy (including an automobile insurance policy) or under a no-fault insurance plan; and (b) the Secretary is authorized to waive this provision if he determines that the probability of recovery or the amount involved under such a policy or plan does not warrant the pursuing of the claim.
>
> *Conference agreement.*-The conference agreement follows the Senate amendment with modifications to clarify that the provision (a) *is also applicable to self-insurance plans,* and (b) will be administered, with respect to the recovery of amounts payable under a plan or policy, as provided in the House bill...

H.R. CONF. REP. NO. 7765, at 133 (1980), *reprinted in* 1980 U.S.C.C.A.N 4726, 5924 (emphasis added).

This sparse legislative history does not provide any indication that the MSP statute was intended to apply to tortfeasors generally. Nor does it offer any support for plaintiffs' suggested distinction between large corporations and "mom and pop" corporations without liability insurance. There is no indication of legislative design to treat a homeowner or any individual without insurance differently from a small "S" corporation or a huge public corporation.

## IV. Inappropriateness of Class Action

Plaintiffs have moved for class certification. A class action is not appropriate. Class actions allow many small claims to be litigated together, making it cost-effective to prosecute the claims. *See, e.g., Gulf*

**94**

*Oil Co. v. Bernard*, 452 U.S. 89, 99–100 n. 11, 101 S.Ct. 2193, 68 L.Ed.2d 693 (1981). Requiring each individual to bring suit against the tobacco companies to recover their individual Medicare costs would not be cost effective. The MSP statute does not by its terms require each individual covered by Medicare to bring suit. Through a private cause of action any "private attorney general" may sue. The statute does not specify that the action be brought by a person who received the Medicare payment. It authorizes a civil proceeding similar to a *qui tam* action where anyone can bring a claim on behalf of the United States government and receive a bounty. *See e.g.* False Claims Act, 31 U.S.C. 3730 (2002); *Vermont Agency of Natural Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 120 S.Ct. 1858, 146 L.Ed.2d 836 (2000).

If the class were certified according to the plaintiffs' proposal, individual class members who received medicare benefits would receive a portion of the bounty without having done any of the work (or taking any of the risk) in bringing the suit. They would receive damages for being a Medicare recipient with a tobacco-related illness. This resolution is inconsistent with the *qui tam*-like nature of the MSP. All taxpayers or payors of medical premiums are harmed by Medicare paying for services for which other entities ought to cover. Plaintiffs' plan to divide the money among Medicare recipients with a tobacco-related illness would be an act of benevolence, not a reason for class certification.

**V. Conclusion**

Defendants' motion to dismiss is granted. Certification is denied.

SO ORDERED