James MASON, Billie June Richie, and Glenn Bailey, individually and on behalf of a class of all others similarly situated, Plaintiffs–Appellants,

v.

The AMERICAN TOBACCO COMPANY, R.J. Reynolds Tobacco Company, Brown & Williamson Tobacco Corp., Philip Morris USA Incorporated, Lorillard Inc., United States Tobacco Company, Liggett Group Inc., Liggett & Myers, Inc., and Brooke Group Ltd., Defendants–Appellees.

Docket No. 02–7923.

United States Court of Appeals, Second Circuit.

Argued: March 31, 2003.

Decided: Oct. 2, 2003.

Robert J. Cynkar, Cooper & Kirk, PLLC (Charles J. Cooper and Victor J. Wolski, Cooper & Kirk, PLLC, on the brief), Washington, D.C., Mark B. Hutton, Derek S. Casey, Chan P. Townsley, Hutton & Hutton, Witchita, KS, Ronald D. Wells, Dallas, TX, Gary Richardson, Richardson, Stoops, Richardson & Ward, Tulsa, OK, Jonathan W. Cuneo, Charles J. LaDuca, The Cuneo Law Group, P.C., Washington, D.C., for Plaintiffs–Appellants.

Alan Mansfield, Greenberg Traurig (Stephen L. Saxl, Greenberg Traurig, on the brief) New York, NY, for Lorillard Tobacco Co.

Harold K. Gordon, Bryon Stier, George Kostlolampros, Jones, Day, Reavis & Pogue, New York, N.Y. and Robert H. Klonoff, Michael S. Fried, Washington, D.C., for R.J. Reynolds Tobacco Company.

Murray R. Garnick, David S. Eggert, Sheila B. Scheuerman, J. Benjamin King, Arnold & Porter, Washington, D.C., for Philip Morris Incorporated.

Kenneth N. Bass, Kirkland & Ellis, Washington, D.C., for Brown & Williamson Tobacco Corporation (individually and as successor by merger to The American Tobacco Company).

Colin T. Roskey Washington, D.C., for Amicus Curiae Senator Charles E. Grassley.

Before: NEWMAN, POOLER, and KATZMANN, Circuit Judges.

POOLER, Circuit Judge.

The plaintiffs in this action seek to represent a class of "[i]ndividuals who have received or are receiving health care services for the treatment of tobacco-related illnesses ... which services have been paid for, or are being paid for, by Medicare." *Mason v. American Tobacco Co.,* 212

F.Supp.2d 88, 90 (E.D.N.Y.2002) The defendants are major producers of tobacco products. The district court granted the defendants' motion to dismiss and denied the plaintiffs' motion for class certification. We affirm.

## FACTS

Because the defendants' motion to dismiss rests upon a narrow issue of statutory construction, an extensive discussion of the facts is not required. According to the plaintiffs, "[t]his lawsuit advances essentially one claim: that, under the terms of the MSP statute, defendants should have been the primary payers for the health care services needed to treat certain tobacco-related illnesses of Medicare beneficiaries." Plaintiffs' Brief at 13. The referenced statute is the "Medicare as Secondary Payer" statute. 42 U.S.C. § 1395y(b). We have found the following description of the MSP statute to be particularly useful:

> The Medicare Secondary Payer Program allows the United States to recover Medicare payments from third parties who are required or responsible to pay for medical costs. Congress enacted these provisions to give the United States a right, as a secondary insurer, to demand reimbursement from primary insurers who have a duty to pay for medical treatment. "The Medicare Secondary Payer Program is intended to help the Medicare Program identify situations where another health care plan should be, or should have been, the primary payer for a beneficiary's health services." H.R.Rep. No. 104–87(I), at 4 (1995); *see also Blue Cross & Blue Shield of Tex., Inc. v. Shalala*, 995 F.2d 70, 71–72 (5th Cir.1993) (stating that purpose of program is to prevent group health plans from providing that plan will be secondary payer if Medicare coverage exists).... In other words, the Program seeks to prevent primary insurers from refusing to pay medical expenses because those who are insured under their plans are also eligible for Medicare.

Hanoch Dagan and James J. White, Governments, Citizens, and Injurious Industries, 75 N.Y.U. L. Rev. 354, 402, n. 201 (2000).

Thus, the MSP statute "makes Medicare a 'secondary' payer where another entity, a 'primary payer' is required to pay under a 'primary plan' for an individual's healthcare." *In re Diet Drugs Prods. Liab. Litig.*, 2001 WL 283163 at *9 (E.D.Pa. March 21, 2001) (citing 42 U.S.C. § 1395y(b)(2)). The statute provides for the government to receive double damages in successful actions against primary payers. 42 U.S.C. § 1395y(b)(2)(B)(ii). It also provides for a private right of action, under which the plaintiffs proceed here, pursuant to which individuals may be awarded double damages against a primary plan that has wrongfully denied them payment for health care that has been paid for by Medicare. *See* 42 U.S.C. § 1395y(b)(3)(A).

The district court dismissed the plaintiffs' Fourth Amended Class Action Complaint, holding that, as a matter of law, plaintiffs cannot recover under the MSP statute because the "[d]efendants' status as accused tortfeasors, standing alone, does not convert them under the statute into primary plans or self-insured plans for Medicare beneficiaries injured by using their products." *Mason v. American Tobacco Co.*, 212 F.Supp.2d at 92. That is, there is no basis for the argument "that the MSP statute was intended to apply to tortfeasors generally," as opposed to insurance entities that have wrongfully refused to pay for an individual's healthcare. *Id.* at 93.

## DISCUSSION

We review the district court's grant of the defendants' motion to dismiss *de novo,* a standard pursuant to which we accept all of the plaintiffs' factual allegations as true and draw all reasonable inferences in favor of the plaintiffs. *DeMuria v. Hawkes,* 328 F.3d 704, 706 (2d Cir.2003). On the other hand, " '[l]egal conclusions, deductions or opinions couched as factual allegations are not given a presumption of truthfulness.' " *U.S. v. Bonanno Organized Crime Family of La Cosa Nostra,* 879 F.2d 20, 27 (2d Cir.1989) (quoting 2A J. Moore, *Moore's Federal Practice,* ¶ 12.07[2.–5] at 63–64 (2d ed. 1987)).

Amicus Senator Grassley characterizes this case as "the first major use of the MSP private right of action fashioned to encourage 'private attorneys general' to assist in this critical initiative to preserve the financial integrity of Medicare." Grassley Brief at 4. Nevertheless, the most striking thing about this appeal is that it carries with it a terrific amount of precedential baggage. The federal government has already tried unsuccessfully to use the MSP statute to assert a claim against the proceeds of a settlement in an individual tort action, *Thompson v. Goetzmann,* 2001 WL 771012 (N.D.Tex. July 3, 2001) (Rule 12(b)(6) dismissal granted), *aff'd.,* 315 F.3d 457 (5th Cir.2002), *superceded,* 337 F.3d 489 (5th Cir.2003) (per curiam), and to assert claims against settlement funds established in mass tort cases. *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 202 F.R.D. 154 (E.D.Pa.2001) (granting preliminary injunction against government's claims); *In re Diet Drugs Prods. Liab. Litig.,* 2001 WL 283163 (E.D.Pa.2001) (motion to distribute settlement funds granted); *but see U.S. v. Baxter Int'l, Inc.,* 345 F.3d 866 (11th Cir.2003) (*"Baxter Int'l"*) (reversing district court's dismissal of federal government's motion to intervene in order to assert claims against settlement fund). The federal government has also failed in an attempt to use the statute as a basis to file proofs of claim against the bankruptcy estate of a manufacturer of silicone breast implants. *See In re Dow Corning Corp.,* 250 B.R. 298 (Bkrtcy. E.D.Mich.2000) (summary judgment granted). Most important, the government has already attempted to bring essentially the same claim against tobacco companies that plaintiffs are bringing here and lost. *See U.S. v. Philip Morris, Inc.,* 156 F.Supp.2d 1 (D.D.C.2001) (*"Philip Morris II"*)(motion to dismiss amended complaint granted); *U.S. v. Philip Morris, Inc.,* 116 F.Supp.2d 131 (D.D.C.2000) (*"Philip Morris I"*) (motion to dismiss granted). As we now discuss, there are at least three reasons why these precedents convince us that the district court properly granted the defendants' motion to dismiss.

### A. Are the Defendants a "Primary Plan?"

As already noted, the MSP statute allows Medicare to be reimbursed whenever a "primary payer" has wrongfully failed to provide healthcare coverage to an individual pursuant to a "primary plan." The statute defines "primary plan" as "a group health plan or large group health plan, . . . a workmen's compensation law or plan, an automobile or liability insurance policy or plan (*including a self-insured plan*) or no fault insurance . . . ." 42 U.S.C. § 1395y(b)(2)(A) (emphasis added). Regulations promulgated under the MSP statute define "self-insured plan" as an "arrangement, oral or written . . . to provide health benefits or medical care or [to] assume legal liability for injury or illness" under which an entity "carries its own risk instead of taking out insurance with a carrier." 42 C.F.R. §§ 411.21, 411.50(b).

Plaintiffs argue that each defendant in this action "is a self-insured plan as a matter of law because the corporate structure through which each conducts its business has the purpose and legal effect, in part, to assume legal liability for injury." Plaintiffs' Brief at 15. That is, the corporate form in and of itself is a means of self-insurance because it allows individual directors and shareholders to shift liability from themselves to the corporation. Or, as the plaintiffs put it, "it is commonly recognized that liability insurance and the corporate structure accomplish the same ends, and are 'substitutes' for each other." Plaintiffs' Brief at 41.

The obvious problem with this approach is that it turns *every* corporation into an insurance company subject to suit under the MSP statute. But courts have uniformly rejected similar readings of the statute as seriously overbroad. The rejection is best stated in *Philip Morris II:*

> Its logical implication is that any [corporate] entity with a risk of legal liability which chooses to retain any portion of that risk, no matter how small, may be pursued under MSP on the ground that it is a "self-insured plan." ... The practical effects of [this] conception of MSP liability would transform the statute, meant primarily for use against insurers, *see Philip Morris [I],* 116 F.Supp.2d at 146 n. 22, into the very "across-the-broad procedural vehicle for suing tortfeasors," which this *Court* has already declared impermissible. *Id.* at 135. Significantly, the Government is unable to provide any logically consistent way in which this outcome could be averted.

*Philip Morris II,* 156 F.Supp.2d at 7–8.

■ The plaintiffs here try to supply the argument's missing logical consistency by asserting that only "large corporations" will be *per se* subject to suit under the MSP statute because "it is only large corporations, like defendants, that can afford to bear all the risk of their potential liabilities, that is, to self-insure." Plaintiffs' Brief at 49. But the district court correctly rejected this assertion because the text and the legislative history of the MSP statute do not support any such distinction "between large corporations and 'mom and pop' corporations without liability insurance. There is no indication of a legislative design to treat a homeowner or any individual without insurance differently from a small 'S' corporation or a huge public corporation." *Mason v. American Tobacco Co.,* 212 F.Supp.2d at 93. *See also Thompson v. Goetzmann,* 337 F.3d at 502 ("there is simply no statutory support for the government's position that uninsured 'sophisticated corporations' are *per se* self-insurers"); *Philip Morris II,* 156 F.Supp.2d at 7 ("the Government never advances any reason why a distinction should be made under MSP between 'sophisticated corporations' and other parties, and how such a dichotomy could hold up in practice").

In their reply brief, plaintiffs make the following assertion in a further attempt to overcome this problem:

> We do not posit that every entity, or every tortfeasor, without insurance is a self-insured plan. We *do* contend, however, that every publicly-traded corporation—such as the defendants—that does not purchase insurance to cover the risk of its activities is, to that extent, a self-insured plan as a matter of law.

Reply Brief at 21 (emphasis in original).

But limiting the MSP statute to "publicly-traded corporations" has no more basis in the statutory text or the regulations promulgated pursuant to the statute than does limiting the statute to "sophisticated corporations." It also makes less sense in light of the fact that some of the largest

corporations in the world are closely-held, and not publicly-traded, corporations.

The plaintiffs also argue that the defendants are self-insured plans as a matter of *fact* because they have made numerous public statements, made for the most part in documents required to be filed with the Securities and Exchange Commission, declaring that they will meet future tort liability through internal funds, and not through the purchase of liability insurance. *See* Plaintiffs' Brief at 57–60. These statements may very well be assertions of a preference for self-insurance on the part of the defendants. But regulations promulgated by the Health Care Financing Administration ("HCFA"), the agency that administers Medicare, state explicitly that "'the mere absence of insurance purchased from a carrier does not necessarily constitute a "plan" of self-insurance.'" *Philip Morris II*, 156 F.Supp.2d at 6 (quoting Medicare as Secondary Payer and Medicare Recovery Against Third Parties, 54 Fed. Reg. 41716, 417272 (Oct. 11, 1989)). Further, "HFCA itself has ruled that '[o]ne of the conditions for a self-insurance program is that the provider must establish a fund with an independent fiduciary which is documented by a written agreement that includes legal responsibilities and obligations required by State laws.'" *Id.* (quoting *Mt. Diablo Med. Ctr. v. Blue Cross & Blue Shield Ass'n*, Dec. No. 96–D40, 1996 WL 862610 at *6 (P.R.R.B. July 1, 1996)). Thus, "[t]he statute's requirement of the existence of a primary 'plan', connotes some type of formal arrangement by which an entity consciously undertakes to set aside funds to cover potential future liabilities and a formal procedure for processing claims made against that fund pursuant to the terms of the 'plan.'" *In re Diet Drugs Prods. Liab. Litig.*, 2001 WL 283163 at *10.

But the complaint merely declares the purely legal conclusion, which we have just held to be incorrect, that "a 'self-insured plan' within the meaning of the MSP statute includes a corporation that has decided not to buy insurance for the legal liabilities or obligations that might be imposed on it, whether or not that decision is written down, and whether or not the corporation has established reserves to cover such liabilities or obligations." Fourth Amended Class Action Complaint, ¶ 34. The complaint does not allege, even in a conclusory fashion, that the defendants, alone or collectively, have actually established any concerted plan to pay anyone's healthcare expenses beyond having made a decision to set aside funds to cover potential future tort liability. This is not sufficient to constitute a self-insured plan for the purposes of the MSP statute, and the district court correctly held that, at least on the strength of the allegations set forth in the complaint, the "[d]efendants have no such plan in place." *Mason v. American Tobacco Co.*, 212 F.Supp.2d at 92. *See also Thompson v. Goetzmann*, 337 F.3d at 500–01 ("we are compelled to pose the rhetorical question, where's the plan?"); *Philip Morris II*, 156 F.Supp.2d at 6 (dismissing MSP claim where plaintiffs failed to allege the existence "of claims-handling procedures; of a fiduciary ... or of written documents allocating legal responsibilities and obligations").

Our conclusion here is not called into question by the Eleventh Circuit's very recent decision in *Baxter Int'l*. That case involved the federal government's motion to intervene in a mass tort litigation in which a settlement had been negotiated between a plaintiff class and a group of defendants who were manufacturers of silicone breast implants. The government sought intervention in order to seek reimbursement under the MSP statute for medical costs of class members which had

been paid by Medicare. The Eleventh Circuit reversed the district court's dismissal of the motion, a decision that was in part based upon a finding that the defendants were not a self-insured plan within the meaning of the MSP statute.

The instant case is clearly distinguishable. Through the establishment of a settlement fund, the *Baxter Int'l* defendants had assumed obligations to pay for the medical costs of plaintiff class members. Thus, as the Eleventh Circuit noted, "[a]ccording to the Government's complaint, about 81,000 claimants had received some payment from [the settlement fund] as of April 1999. To date, more than 400,000 women have registered as potential claimants, and [the defendants] have paid more than $1 billion" into the settlement fund. 345 F.3d at 873–74, 2003 WL 22120071 at *2. The instant case presents a far different situation. Here the plaintiffs are asserting claims under the MSP statute against alleged tortfeasors who have yet to assume the medical costs of any identifiable group of individuals. At most, the plaintiffs can only assert that the defendants have set aside funds to cover possible future liabilities. But the Eleventh Circuit specifically held in *Baxter Int'l* that the mere "set[ting] aside of funds ... to cover future liabilities" is insufficient by itself to constitute a self-insurance plan within the meaning of the MSP statute. *Id.* 345 F.3d at 894, *20. Indeed, the court declared its agreement with the district court's opinion in the instant case, which it correctly characterized as "rejecting the theory that a large corporation without insurance that was accused of inflicting a tortious injury was, by definition, operating a self-insured plan." *Id.* at 895, n. 22, *22, n. 22. For the reasons discussed above, we have rejected this theory as well.

## B. Does the MSP Statute Reach Alleged Tortfeasors?

The MSP statute establishes a program of *reimbursement*. That is, the statute allows Medicare (or an individual Medicare recipient) to be awarded healthcare costs pursuant to a preexisting contractual obligation: "MSP liability attaches only to an entity that is 'required or responsible' to pay under a 'primary plan.'" *Philip Morris II*, 156 F.Supp.2d at 5 (citing 42 U.S.C. Section 1395y(b)(2)); *see also In re Dow Corning Corp.*, 250 B.R. at 340 ("the primary plan's responsibility rests upon contract principles and the question of tort liability is not part of the equation").

█ Not surprisingly, therefore, "the [MSP] statute has apparently never been successfully used to pursue a non-insurance entity." *Philip Morris II*, 156 F.Supp.2d at 5. And, with the exception of the Eleventh Circuit in its decision in *Baxter Int'l*, courts have rejected all efforts to apply the statute's heavy remedy of double damages to the context of tort litigation. *See Thompson v. Goetzmann*, 337 F.3d at 504 (no cause of action under MSP against party who "was simply an alleged tortfeasor"); *Philip Morris II*, 156 F.Supp.2d at 8 ("neither in its brief nor in its complaint does the Government describe the actual circumstances in which 'a tortfeasor that elects to carry its own risk of liability in a lawsuit rather than to claim against its insurance [would], by that election, make itself subject to an MSP claim'"); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 202 F.R.D. at 163 ("MSP was not meant to encompass alleged tortfeasors who merely fund liability settlements with their own assets or corporate borrowings"); *In re Diet Drugs Prods. Liab. Litig.*, 2001 WL 283163 at *11 ("MSP cause of action arises when the 'primary plan' is obligated to pay for the primary care at issue under a contract of insurance,

not when the payment obligation arises out of tort litigation").

 We find these holdings persuasive and do not find that the plaintiffs here have offered any compelling, or even colorable, reason as to why the MSP statute *should* apply to tort litigation. The plaintiffs question "why is it 'harsh' to impose double damages on a corporate tortfeasor who has chosen to self-insure (and who actually caused the victim's harm), but it is not 'harsh' to impose double damages on the corporate tortfeasor who has bought insurance, or, even worse, on the insurance company who has actually done nothing wrong?" Plaintiffs' Brief at 53. But the answer to this is simply that it is harsh to impose MSP liability against alleged tortfeasors, but it is not harsh to impose such liability against entities who renege upon a pre-existing contractual arrangement to provide healthcare coverage. That is, it is not harsh to use the statute to serve the purpose for which it was enacted. In sum, the defendants are clearly correct when they assert that "the trigger for bringing a MSP claim is not the pendency of a disputed tort claim, but the established obligation to pay medical costs pursuant to a pre-existing arrangement to provide insurance benefits." Defendants' Brief at 12.

## C. Is There a *Chevron* Problem?

 Under familiar principles of administrative law, courts must defer to an agency's "permissible construction" or "reasonable interpretation" of ambiguous statutory terms. *Chevron U.S.A. v. Natural Res. Def. Counsel, Inc.,* 467 U.S. 837, 843–44, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The plaintiffs argue that such deference is due here. Plaintiffs' Brief at 21, 25. And the federal government itself has argued that courts must defer to the interpretation of the MSP statute it had urged in the cases discussed in this opinion. But

these claims have been uniformly rejected. *Thompson v. Goetzmann,* 337 F.3d at 502 (court need not defer to statutory interpretation that is "nothing more than the litigation position of agency counsel that is wholly unsupported by regulations, rulings, or administrative practice"; citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.,* 202 F.R.D. at 164 (same). Because we believe that plaintiffs' interpretation of the MSP statute is essentially the same unsupported interpretation of the MSP statute urged by the federal government, we do not believe this Court need pay it the substantial deference called for by *Chevron.*

## CONCLUSION

We are sensitive to the concerns expressed by amicus regarding "the fiscal integrity of Medicare." Grassley Brief at 9. The MSP statute was certainly enacted with these concerns in mind. But we cannot accept that the statute extends as far as the plaintiffs contend. Amicus has also asserted that the MSP statute has previously been amended to effect a "continuing expansion of the MSP regime." Grassley Brief at 10. Future amendments will be required for the statute to extend to the defendants in this action.

The judgment of the district court is AFFIRMED.