07-4208-cv
Woods v. Empire Health Choice, Inc.

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

August Term 2008

Argued: January 13, 2009                  Decided: July 29, 2009

Docket No. 07-4208-cv

_____

JACK WOODS,

*Plaintiff-Appellant*,

-v.-

EMPIRE HEALTH CHOICE, INC., EMPIRE MEDICAL SERVICES,
a division of EMPIRE HEALTH CHOICE ASSURANCE, INC.,

*Defendants-Appellees.*

_____

Before:       LEVAL, CABRANES, LIVINGSTON, *Circuit Judges*.

Plaintiff-Appellant Jack Woods appeals from a judgment of the United States District Court for the Eastern District of New York (Irizarry, J.) dismissing for lack of standing his complaint asserting a cause of action under 42 U.S.C. § 1395y(b)(3)(A). Woods contends primarily that the District Court erred by determining that § 1395y(b)(3)(A) does not permit a private individual to assert a *qui tam* action on behalf of the Government. We conclude that 42 U.S.C. § 1395y(b)(3)(A) does not create a *qui tam* action, but rather merely enables a private party to bring an action to

recover from a private insurer only where that private party has itself suffered an injury because a primary plan has failed to make a required payment to or on behalf of it.

Affirmed.

EDWARD G. BAILEY, Bailey & Sherman, P.C., Douglaston, New York, *for Plaintiff-Appellant*.

DALY D.E. TEMCHINE (AIME DEMPSEY, *on the brief*), Epstein Becker & Green, P.C., New York, New York, *for Defendants-Appellees*.

LIVINGSTON, *Circuit Judge*:

Plaintiff-Appellant Jack Woods ("Woods") appeals from the August 20, 2007 judgment of the United States District Court for the Eastern District of New York (Irizarry, J.), dismissing for lack of standing his complaint asserting a private cause of action under 42 U.S.C. § 1395y(b), the Medicare Secondary Payer statute (the "MSP").  Woods argues primarily that the MSP's private cause of action provision, 42 U.S.C. § 1395y(b)(3)(A), which allows a private party to bring suit to recover from a primary insurer amounts the insurer was required, but failed, to pay, grants all private parties standing to bring suit to recover such funds in a *qui tam* action on behalf of the Government. He also contends, in the alternative, that he has suffered an injury sufficient to grant him standing to bring his action against Defendants-Appellees regardless whether § 1395y(b)(3)(A) creates a *qui tam* action. Because we conclude that § 1395y(b)(3)(A) does not authorize a private party to bring a *qui tam* action and that Woods does not otherwise have standing to pursue the claims asserted in his complaint, we affirm the judgment of the District Court.

**BACKGROUND**

**A.     Procedural History**

On February 1, 2005, Woods, proceeding *pro se*, filed a complaint against Defendants-Appellees in the United States District Court for the Eastern District of New York. As alleged in the complaint, Defendant-Appellee Empire Health Choice, Inc. ("Empire") is a "Medicare carrier and contractor/intermediary rendering services on behalf of beneficiaries of the federally-funded Medicare program." Among Empire's purported duties in administering the Medicare program is ensuring that claims primarily covered by a beneficiary's private insurance are paid by the primary insurer, not Medicare. The complaint further asserted both that Empire had failed to ensure that such claims were paid by the applicable primary insurers and that Empire was itself a primary insurer directly responsible for a substantial portion of the unpaid amounts. It contained no allegations, however, indicating how Woods had been individually injured by Empire's alleged conduct. Rather, it stated merely that Woods was a "resident of the State of New York," that Empire's actions required the Government to incur substantial costs in order to realize only partial recovery of the amounts owed to it, and that "millions would be saved annually for the taxpayers of America" if Empire adhered to its alleged duties. Drawing upon these factual allegations, the complaint asserted that Empire was liable under § 1395y(b)(3)(A) for all amounts paid from Medicare funds for which Empire, as an insurer, was primarily liable.

Instead of filing an answer, Empire moved to dismiss Woods's complaint for lack of subject matter jurisdiction and for failure to state a claim on which relief might be granted. *See* Fed. R. Civ. P. 12(b)(1), (6). Following the filing of this motion, Woods delayed filing any papers in opposition,

repeatedly requesting extensions of time to which Empire consented. These requests eventually culminated in a deadline of August 1, 2005 for Woods to submit any opposition to Empire's motion. That date passed without Woods making any filing. Accordingly, by letter dated September 7, 2005, Empire requested that its motion be deemed unopposed. The District Court initially granted this request. Shortly after the District Court issued this order, however, Woods, still proceeding *pro se*, submitted a letter requesting vacatur and the award of one last extension of time. The District Court agreed, vacating its previous decision and granting Woods until October 20 of that year to file papers opposing Empire's motion.

On October 20, 2005, Empire's counsel received a fax from attorney Edward G. Bailey, who purported to represent Woods and who represents Woods in this appeal, containing papers responding to Empire's motion. In addition to a memorandum of law, the opposition papers contained documentary evidence of Empire's use of Medicare funds to pay for medical care received by Woods. The fax cover sheet indicated that a hard copy of the opposition papers would follow by mail. No such copy followed within the next week, however. Only after Empire's counsel repeatedly requested a hard copy of the document was it eventually delivered on November 1, 2005. Empire then requested that the District Court consider the purported opposition papers void on account of improper and untimely service and deem Empire's motion unopposed. The District Court granted this request. In so doing, it also noted that Bailey had yet to file a notice of appearance on behalf of Woods, causing Woods to remain technically a *pro se* litigant.

Some months later, the District Court issued a decision granting Empire's initial motion and dismissing Woods's suit for lack of standing. Noting that Woods's complaint contained no

allegations indicating that Empire had failed to make a required payment for medical care received by Woods or that Woods was even a Medicare recipient, it determined that Woods did not possess standing under the ordinary requirements. In addition, it concluded, drawing upon several differences between the MSP and several statutes recognized as establishing *qui tam* actions, that the MSP did not create a *qui tam* action allowing any private party to bring suit on behalf of the Government to recover any amounts erroneously paid by Medicare instead of a primary insurer. This appeal followed.

**B.      The Medicare Secondary Payer Statute**

Under 42 U.S.C. § 1395y(b)(2)(A)(i), Medicare generally may not pay for any item or service if "payment has been made, or can reasonably be expected to be made, with respect to the item or service" under a primary plan. On the other hand, if the relevant primary plan "has not made or cannot reasonably be expected to make payment with respect to such item or service promptly," Medicare may make the necessary payment. *Id.* § 1395y(b)(2)(B)(i). Should, however, it be determined that the primary plan was in fact obligated to pay for the item or service at issue, the primary plan must reimburse Medicare for that payment. *See id.* § 1395y(b)(2)(B)(ii). Under these circumstances, the Government may bring an action for reimbursement against any entity required to make such a payment or "any entity that has received payment from a primary plan or from the proceeds of a primary plan's payment to any entity." *See id.* § 1395y(b)(2)(B)(iii). Furthermore, the Government is "subrogated (to the extent of payment made [by Medicare but required to be paid by a primary plan]) to any right under [the MSP] of an individual . . . to payment . . . under a primary

5

plan." *Id.* § 1395y(b)(2)(B)(iv).

In addition to the governmental action described above, the MSP also establishes a private right of action to recover amounts owed by a primary plan. Specifically, it states that:

> There is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . .

*Id.* § 1395y(b)(3)(A). The MSP does not further describe the private action it establishes.

## DISCUSSION

We review *de novo* the District Court's dismissal of Woods's complaint for lack of standing pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6). *See Klein & Co. Futures, Inc. v. Bd. of Trade*, 464 F.3d 255, 259 (2d Cir. 2006). "[W]e presume the general factual allegations embrace those facts necessary to support the claim and are constrained not only to accept the truth of [Woods's] jurisdictional allegations, but also to construe all reasonable inferences to be drawn from those allegations in [Woods's] favor." *Brooklyn Legal Servs. Corp. v. Legal Servs. Corp.*, 462 F.3d 219, 226 (2d Cir. 2006) (citation omitted).

In order to have standing to bring suit, a plaintiff is constitutionally required to have suffered (1) a concrete, particularized, and actual or imminent injury-in-fact (2) that is traceable to defendant's conduct and (3) likely to be redressed by a favorable decision. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992); *Port Wash. Teachers' Ass'n v. Bd. of Educ.*, 478 F.3d 494, 498 (2d Cir. 2007). In addition to the constitutional requirements, standing doctrine ordinarily embraces several prudential requirements, including, *inter alia*, "the general prohibition on a litigant's raising another person's legal rights [and] the rule barring adjudication of generalized

6

grievances more appropriately addressed in the representative branches." *Allen v. Wright*, 468 U.S. 737, 751 (1984); *see also Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 126 (2d Cir. 2003); *Ctr. for Reproductive Law & Policy v. Bush*, 304 F.3d 183, 196 (2d Cir. 2002).

Even if we construe Woods's *pro se* complaint liberally, *see Bertin v. United States*, 478 F.3d 489, 491 (2d Cir. 2007), it manifestly fails to establish his standing to bring this action. The complaint identifies Woods merely as "a resident of the State of New York." It alleges no direct injury to him whatsoever. Instead, the complaint asserts only that the Government has suffered substantial pecuniary injury as a result of Empire's actions, depriving taxpayers of savings to which they are rightfully entitled. The alleged injury suffered by the Government, however, was not inflicted on Woods. *See Vt. Agency of Natural Res. v. United States ex rel. Stevens*, 529 U.S. 765, 771-72 (2000). Any injury Woods suffered as a federal taxpayer was too generalized and attenuated to constitute an actual injury to himself. *See DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 344 (2006) ("Standing has been rejected in [taxpayer standing] cases because the alleged injury is . . . a grievance the taxpayer suffers in some indefinite way in common with people generally." (internal quotation marks omitted)); *Bd. of Educ. v. N.Y. State Teachers Ret. Sys.*, 60 F.3d 106, 110 (2d Cir. 1995) ("[S]tanding premised on federal taxpayer status fails for want of a concrete injury; an abstract injury shared by the public does not suffice."). Under ordinary standing principles, then, the allegations of Woods's complaint do not establish his standing to bring suit.

Woods argues, however, that the evidence he submitted with his opposition papers, which he contends the District Court improperly refused to consider, establishes his standing to pursue the current action. As previously noted, this evidence indicates that Empire used Medicare funds to pay

7

for medical care received by Woods. Even assuming that the District Court should have considered Woods's opposition papers and assuming (without deciding) that the evidence relied upon by Woods could show that he personally suffered a sufficiently particularized injury from Empire's failure in its role as a primary insurer to make a required payment on his behalf, it clearly does not establish that he has suffered an equivalent injury from Empire's failure to make payments on behalf of other individuals. *See Farrell v. Burke*, 449 F.3d 470, 494 (2d Cir. 2006) ("Federal courts as a general rule allow litigants to assert only their own legal rights and interests, and not the legal rights and interests of third parties."); *see also Warth v. Seldin*, 422 U.S. 490, 502 (1975) ("Petitioners must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified [persons] . . . ."). Accordingly, Woods's evidence, even if considered, can establish only that he has standing to pursue an action to recover the amounts he alleges to have been improperly paid by Medicare for medical care that he personally received. At oral argument, however, he conceded that he would not pursue an action that was limited in this fashion. We therefore need not consider whether the District Court should have accepted Woods's opposition papers or the accompanying evidence. *Cf. Gary Plastic Packaging Corp. v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 903 F.2d 176, 180 (2d Cir. 1990) (declining to consider whether the plaintiff's individual claims were properly dismissed where class certification was rejected and the plaintiff stated at oral argument that it did not intend to pursue its individual claims in isolation).

Separately, Woods contends that he possesses standing to pursue his claim because § 1395y(b)(3)(A) creates a *qui tam* action. In a *qui tam* action, a private plaintiff, known as a relator,

8

brings suit on behalf of the Government to recover a remedy for a harm done to the Government.[1] *See United States ex rel. Eisenstein v. City of New York*, 129 S. Ct. 2230, 2233-34 (2009) (describing *qui tam* actions under the False Claims Act, 31 U.S.C. § 3729 *et seq.*); *United States ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008); *United States ex rel. Karvelas v. Melrose-Wakefield Hosp.*, 360 F.3d 220, 224 & n.5 (1st Cir. 2004); J. Randy Beck, *The False Claims Act and the English Eradication of* Qui Tam *Legislation*, 78 N.C. L. Rev. 539, 541 (2000); *see also Black's Law Dictionary* 1282 (8th ed. 2004) (defining "*qui tam* action" as "[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive"). *Qui tam* plaintiffs, even if not personally injured by a defendant's conduct, possess constitutional standing to assert claims on behalf of the Government as its effective assignees. *See Vt. Agency*, 529 U.S. at 773-74. There is, however, no common law right to bring a *qui tam* action; rather, a particular statute must authorize a private party to do so. *See Conn. Action Now, Inc. v. Roberts Plating Co.*, 457 F.2d 81, 84 (2d Cir. 1972); *see also United Seniors Ass'n v. Philip Morris USA*, 500 F.3d 19, 23 (1st Cir. 2007).

Statutes authorizing *qui tam* actions are quite uncommon. *See Vt. Agency*, 529 U.S. at 768 & n.1 (recognizing fewer than five clear *qui tam* statutes in the entirety of the United States Code). Of the small number of extant laws permitting such an action, by far the most frequently invoked is the False Claims Act, 31 U.S.C. § 3729 *et seq.*, which permits private parties to bring suit on behalf of the Government against persons who knowingly present false claims for payment to an officer or

---

[1] "*Qui tam* is short for the Latin phrase *qui tam pro domino rege quam pro se ipso in hac parte sequitur*, which means 'who pursues this action on our Lord the King's behalf as well as his own.'" *Vt. Agency*, 529 U.S. at 768 n.1.

employee of the Federal Government. *See Vt. Agency*, 529 U.S. at 768-69; *see also* Christina Orsini Broderick, Note, Qui Tam *Provisions and the Public Interest: An Empirical Analysis*, 107 Colum. L. Rev. 949, 952 & n.14 (2007). Other *qui tam* provisions allow private parties to pursue persons who have violated Indian protection laws, *see* 25 U.S.C. § 201, or who have falsely marked articles as patented, *see* 35 U.S.C. § 292(b).

We note at the outset that the Supreme Court did not list § 1395y(b)(3)(A) as among the statutory provisions authorizing *qui tam* actions when it recently considered whether such actions satisfy the constitutional requirements of standing. *See Vt. Agency*, 529 U.S. at 768 n.1. Woods contends, however, that § 1395y(b)(3)(A) does authorize him to bring such an action. We find this argument to lack merit. As always, we begin with the text of the statute. *Cf. New York ex rel. N.Y. State Office of Children & Family Servs. v. U.S. Dep't of Health & Human Servs.' Admin. for Children & Families*, 556 F.3d 90, 97 (2d Cir. 2009) ("To ascertain Congress's intent, we begin with the statutory text because if its language is unambiguous, no further inquiry is necessary." (internal quotation marks omitted)). Section 1395y(b)(3)(A) states that "[t]here is established a *private cause of action* . . . in the case of a primary plan which fails to provide for primary payment." *Id.* (emphasis added). It does not indicate that the underlying action is brought on behalf of the Government or is, in some fashion, public. *Cf. Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 522 (8th Cir. 2007) ("A 'private' right is different from a public right and *qui tam* cases exist to vindicate public rights." (citation omitted)). By contrast, the False Claims Act expressly states that it authorizes a private party to "bring a civil action . . . *for the person and for the United States Government*." 31 U.S.C. § 3730(b)(1) (emphasis added). Other provisions acknowledged to create a *qui tam* action ordinarily

10

either contain similar language, *see, e.g.,* 25 U.S.C. § 201 ("All penalties . . . shall be sued for and recovered in an action in the nature of an action of debt, in the name of the United States . . . ."), or expressly indicate that *any* private party may bring such an action, *see, e.g.,* 35 U.S.C. § 292(b) ("Any person may sue for the penalty . . . ."). The distinct language of the MSP strongly indicates that the MSP allows a private party not to bring suit on behalf of the Government to remedy any wrongs done thereto, but rather to bring suit in the party's own name to remedy the wrong done to it – namely the failure of a primary plan to make the payments required of it on behalf of the private party bringing the suit. *See Stalley v. Methodist Healthcare*, 517 F.3d 911, 918 (6th Cir. 2008) ("[H]ad Congress intended that the private action authorized by the MSP be brought on behalf of the United States, it would surely have made that clear in the language of the statute . . . . Congress could have explicitly made the MSP a *qui tam* statute, but it did not.").

In addition, the MSP does not indicate that a private party will necessarily share any recovery with the Government. Indeed, the language of the MSP appears to indicate that, following a successful action, the victorious private party will keep the entirety of any recovery. *See* 42 U.S.C. § 1395y(b)(3)(A) (stating that the damages recoverable in a private MSP action "shall be in an amount double the amount otherwise provided"). Presumably, the Government would need to initiate a separate action against the private party to reclaim a portion of the proceeds recovered from the delinquent plan. *See id.* § 1395y(b)(2)(B)(iii) (indicating that the Government may bring suit against, *inter alia*, "any entity that has received payment from a primary plan"). Accepted *qui tam* provisions, on the other hand, generally provide for the automatic division of proceeds in a specified fashion between the Government and the private party bringing the action. *See, e.g.,* 25 U.S.C. § 201 (stating

that any recovery generally will be divided "one half to the use of the [private party] and the other half to the use of the United States"); 31 U.S.C. § 3730(d)(1), (2) (indicating that, in an action pursuant to the False Claims Act, a private party shall recover 15-25% of the actual recovery if the Government takes control of the matter and 25-30% of the actual recovery if the Government leaves the matter to the control of the private party); 35 U.S.C. § 292(b) ("[O]ne-half [of the recovery] shall go to the person suing and the other to the use of the United States."). In light of this common feature of *qui tam* provisions, the MSP's failure to even contemplate an automatic division of recovery and apparent requirement that the Government bring a separate suit to capture any portion thereof strongly indicate that a private party may bring suit under the MSP only to remedy its own injury. "We cannot imagine that Congress intended the MSP to function as a *qui tam* statute in such an oblique fashion." *United Seniors*, 500 F.3d at 25.

Furthermore, unlike the False Claims Act, the MSP does not make use of any procedural mechanisms designed to ensure that the Government, the true party in interest in a *qui tam* action, retains some measure of control over the action brought in its name. *See Methodist Healthcare*, 517 F.3d at 918. The False Claims Act imposes a wide array of restrictions designed to ensure ultimate Government control over the progress of a private action, including each of the following: (1) the private party bringing the suit must serve on the Government "[a] copy of the complaint and written disclosure of substantially all material evidence and information the [private plaintiff] possesses," 31 U.S.C. § 3730(b)(2); (2) the private party's complaint must be filed under seal, in which state it must remain for at least sixty days, and it cannot be served upon the defendant until the relevant court so orders, *see id.* § 3730(b)(2), (3); (3) the Government may, as of right, choose to intervene

and proceed with the action, *see id.* § 3730(b)(4), in which circumstance "it shall have the primary responsibility for prosecuting the action," *id.* § 3730(c)(1), and may dismiss or settle the action without the consent of the private party who initiated the action, *see id.* § 3730(c)(2); and (4) the private party must obtain the consent of the Government before dismissing the action, *see id.* § 3730(b)(1).[2] The MSP, however, employs none of these safeguards and does not mandate any alternative procedures having a similar effect. *See* 42 U.S.C. § 1395y(b)(3)(A). Should a private party be allowed to bring a *qui tam* action under the MSP, then, its actions would be circumscribed by no limitations other than those imposed on all litigants in any civil action.

Drawing upon these considerations, each of our sister Circuits to have directly considered the issue has concluded that the MSP does not authorize a *qui tam* action. *See Stalley ex rel. United States v. Orlando Reg'l Healthcare Sys., Inc.*, 524 F.3d 1229, 1234 (11th Cir. 2008); *Methodist Healthcare*, 517 F.3d at 919; *Catholic Health Initiatives*, 509 F.3d at 527; *United Seniors*, 500 F.3d at 26.[3] Woods has presented us with no reason to depart from this consensus. Accordingly, we

---

[2] We recognize that certain other statutory provisions acknowledged to create *qui tam* actions may not contain such procedural safeguards. *See, e.g.,* 25 U.S.C. § 201; 35 U.S.C. § 292(b). Nonetheless, we find it exceedingly unlikely that Congress would create such a broad and unlimited cause of action as would be established under the interpretation of § 1395y(b)(3)(A) urged upon us by Woods without providing the Government with any means of retaining effective control or even awareness of the ongoing litigation.

[3] Woods asserts that the Eleventh Circuit's decision in *Glover v. Liggett Group, Inc.*, 459 F.3d 1304 (11th Cir. 2006), supports his contention that the MSP creates a *qui tam* action. We disagree. Admittedly, *Glover* does contain some language suggesting that the MSP might allow a private party to bring an action on behalf of the Government. *See, e.g., id.* at 1307 ("The MSP . . . creates a private right of action with double recovery to encourage private parties who are aware of non-payment by primary plans to bring actions to enforce Medicare's rights."). Whether the MSP creates a *qui tam* action was, however, not at issue in *Glover*. Furthermore, the Eleventh Circuit has since expressly concluded that the MSP does not create a *qui tam* action. *See Orlando Reg'l*, 524 F.3d at 1234.

13

conclude that a private party may bring suit under § 1395y(b)(3)(A) only where the private party has itself suffered an injury, ordinarily because a primary plan has failed to make a required payment to or on behalf of that party.

Despite Woods's protestations, this Court's previous decision in *Manning v. Utils. Mut. Ins. Co.*, 254 F.3d 387 (2d Cir. 2001), does not require us to reach the opposite conclusion. In *Manning*, this Court considered, *inter alia*, the appropriate statute of limitations for a private MSP action. *See id.* at 391-98. Admittedly, it analogized the MSP action to the right of action established by the False Claims Act and ultimately determined that the statute of limitations applicable to an action under the False Claims Act should also govern an MSP action. *See id.* at 394-95, 398. Moreover, the *Manning* Court noted that:

> both statutes allow individual citizens, as well as the government, to sue in order to right an economic wrong done to the government[,] . . . allow for a multiplier of damages to enable the government to recover its funds while also providing a financial incentive for private citizens to bring such suits [and] create "private attorneys general" by authorizing private citizens to receive part of the recovery.

*Id.* at 394 (citations omitted). At the same time, however, this Court did not conclude in *Manning* that the MSP establishes a *qui tam* action. Instead, it merely made the more limited determination that the False Claims Act "'provides a closer analogy [to the MSP] than . . . state alternatives.'" *Id.* at 395 (quoting *Phelan v. Local 305 of United Ass'n of Journeymen, & Apprentices of Plumbing & Pipefitting Indus. of U.S. & Can.*, 973 F.2d 1050, 1058 (2d Cir. 1992)). In addition, the *Manning* Court noted "procedural differences" between the two actions, among which is that, while an MSP action is "a private right of action for individuals whose medical bills are improperly denied by insurers and instead paid by Medicare, and the government is subrogated to the right of the private

14

citizen for the recovery of such funds," an action under the False Claims Act is a suit by "a private citizen . . . to recover on a claim falsely submitted and paid by the United States, but such action is a relator action brought in the name of the government." *Id.* at 394-95. This discussion strongly suggests that, despite the broad language employed earlier in the decision, the MSP action is not a general *qui tam* action, but rather is available to a private party only when that party has suffered an individualized injury.

Woods's reliance on *Mason v. American Tobacco Co.*, 212 F. Supp. 2d 88 (E.D.N.Y. 2002), *aff'd*, 346 F.3d 36 (2d Cir. 2003), is similarly unavailing. Although the District Court in *Mason* stated that the MSP "authorizes a civil proceeding similar to a *qui tam* action where anyone can bring a claim on behalf of the United States government and receive a bounty," *id.* at 94, it did so only in the course of discussing whether class certification would be appropriate after already suggesting that the defendants at issue were not appropriate targets of an MSP action and dismissing the action, apparently on that ground, *see id.* at 91-94. Moreover, while the District Court indicated that the "[v]iability of the action and certification are intertwined and need to be considered together," *id.* at 90, this Court affirmed the dismissal of the action in *Mason* without considering certification and made no mention of the District Court's suggestion that the MSP creates a general *qui tam* action, *see Mason v. Am. Tobacco Co.*, 346 F.3d 36 (2d Cir. 2003). Accordingly, despite Woods's contention to the contrary, *Mason* does not preclude us from determining that the MSP does not create a *qui tam* action.

**CONCLUSION**

For the reasons described herein, we conclude that 42 U.S.C. § 1395y(b)(3)(A) does not create a *qui tam* action, but rather merely enables a private party to bring an action to recover from a private insurer only where that private party has itself suffered an injury because a primary plan has failed to make a required payment to or on behalf of it. For this reason, the judgment of the District Court is **AFFIRMED**.