**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 17-1597**

---

KATHY A. NETRO, Personal Representative of the Estate of Barbara Bromwell, Deceased,

　　　　Plaintiff - Appellant,

v.

GREATER BALTIMORE MEDICAL CENTER, INC.,

　　　　Defendant - Appellee.

---

Appeal from the United States District Court for the District of Maryland, at Baltimore. George L. Russell, III, District Judge.  (1:16-cv-03769-GLR)

---

Argued:  March 22, 2018　　　　　　　　　　Decided:  June 4, 2018

---

Before WILKINSON, TRAXLER, Circuit Judges, and Leonie M. BRINKEMA, United States District Judge for the Eastern District of Virginia, sitting by designation.

---

Affirmed by published opinion. Judge Wilkinson wrote the opinion, in which Judge Brinkema joined. Judge Traxler wrote a dissenting opinion.

---

**ARGUED:**  George Somerville Tolley, III, DUGAN BABIJ & TOLLEY, LLC, Timonium, Maryland, for Appellant.  Christina Nicole Billiet, WARANCH & BROWN, LLC, Lutherville, Maryland, for Appellee.  **ON BRIEF:**  Neal M. Brown, WARANCH & BROWN, LLC, Lutherville, Maryland, for Appellee.

---

WILKINSON, Circuit Judge:

Kathy Netro brought a medical malpractice suit in state court against the Greater Baltimore Medical Center for its negligent care of her now-deceased mother. When she won, GBMC became liable under federal law for payments Medicare had made for Netro's mother's treatment. GBMC did not immediately satisfy the judgment. And three weeks after the state court entered its final order, Netro brought this suit to recover solely the funds owed to Medicare and to collect for herself under the Medicare Secondary Payer Act, 42 U.S.C. § 1395y, which authorizes a private cause of action for double damages where a recalcitrant payer "fails" to reimburse Medicare. But before the litigation went very far, GBMC paid Netro the state court judgment, which included the full amount owed to Medicare. This series of events brings us to the straightforward question in this case: Did GBMC "fail" to pay the funds owed to Medicare? The district court said no, and we agree.

I.

A.

In 1980, Congress enacted the Medicare Secondary Payer Act to address ballooning medical entitlement costs. Before the legislation went into effect, Medicare would pay for all medical treatment within its ambit, even if a private party such as an insurer was also responsible. The MSP Act "inverted that system" and made Medicare "an entitlement of last resort, available only if no private [party] was liable." *Humana Med. Plan, Inc. v. W. Heritage Ins. Co.*, 832 F.3d 1229, 1234 (11th Cir. 2016).

2

Congress designed this new arrangement with an important caveat. Where a private party responsible for medical costs does not or cannot promptly meet its obligations, Medicare may pay up front, so long as the responsible party eventually reimburses the government. *See* 42 U.S.C. § 1395y(b)(2)(B). Congress later added two tools to ensure that so-called "primary plans" would compensate Medicare for these "conditional payments": a direct government action against the responsible party, and a private enforcement provision.

42 U.S.C. § 1395y(b)(3)(A) provides that "[t]here is established a private cause of action for damages (which shall be in an amount double the amount otherwise provided) in the case of a primary plan which fails to provide for primary payment (or appropriate reimbursement) . . . ." Legislative history is scant, but "[c]ourts considering the provision have generally agreed that the apparent purpose of the statute is to help the government recover conditional payments from insurers or other primary payers." *Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 524 (8th Cir. 2007) (collecting authorities).

> The thinking behind the statute is apparently that (1) the beneficiary can be expected to be more aware than the government of whether other entities may be responsible to pay his expenses; (2) without the double damages, the beneficiary might not be motivated to take arms against a recalcitrant insurer because Medicare may have already paid the expenses and the beneficiary would have nothing to gain by pursuing the primary payer; and (3) with the private right of action and the double damages, the beneficiary can pay back the government for its outlay and still have money left over to reward him for his efforts.

*Id*. at 524-25.

B.

In June 2011, GBMC performed hip replacement surgery on Barbara Bromwell. After the surgery, she suffered complications that resulted in partial paralysis. Bromwell died two years later. Her daughter, Kathy Netro, was named personal representative of Bromwell's estate.

Netro filed a medical malpractice suit against GBMC in Maryland state court. After a trial on the merits, a jury found GBMC liable for $451,956 in damages on July 22, 2016. That figure included compensation for $157,730.75 in "conditional payments" made by Medicare for Bromwell's treatment. Netro was obligated to pass along that portion of the state court judgment to Medicare.

Shortly after the jury verdict, GBMC filed a post-trial motion seeking to reduce the amount of the initial judgment to more accurately reflect the medical expenses actually paid, rather than the amount billed, for Bromwell's care. While the state court considered the motion, GBMC began making arrangements to pay Netro. It requested a Tax Identification Number for Bromwell's estate, but the parties disagreed about whether that information was necessary to make the payment. The state court granted GBMC's motion and entered a final judgment of $389,014.30 on October 31, 2016.

Just three weeks later, on November 21, Netro brought this suit in the United States District Court for the District of Maryland. Alleging that GBMC refused to pay the state court judgment, Netro invoked the private cause of action laid out in the MSP Act.

Sixteen days after Netro filed the federal suit, GBMC paid her $403,722.24, which represented the amended final judgment amount plus post-judgment interest. GBMC then filed a motion arguing that the district court should dismiss Netro's suit for lack of

4

standing, or, in the alternative, grant GBMC summary judgment because it did not "fail" to provide reimbursement for Medicare.

Without addressing the standing argument, the district court granted GBMC's motion for summary judgment on the merits. *See Netro v. Greater Baltimore Med. Ctr. Inc.*, No. CV GLR-16-3769, 2017 WL 5635446, at \*4 (D. Md. Apr. 13, 2017). It reasoned that the statute did not require GBMC to pay Netro or reimburse Medicare immediately after the state court's final judgment, and that GBMC's December 7 payment had satisfied its obligations under the MSP Act.

This appeal followed. We "review legal questions regarding standing de novo." *David v. Alphin*, 704 F.3d 327, 333 (4th Cir. 2013). We also "review a district court's decision to grant summary judgment de novo, applying the same legal standards as the district court, and viewing all reasonable inferences drawn from the evidence in the light that is most favorable to the non-moving party." *Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 208-09 (4th Cir. 2017).

## II.

We first consider whether Netro had Article III standing to bring this suit. "A plaintiff invoking federal jurisdiction bears the burden of establishing the 'irreducible constitutional minimum' of standing by demonstrating (1) an injury in fact, (2) fairly traceable to the challenged conduct of the defendant, and (3) likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1543-44 (2016). GBMC argues that Netro lacked standing because the money she sought to recover was

owed to the government, and not to her. In other words, GBMC contends Netro was not injured.

A.

We believe, to the contrary, that Netro suffered a personal injury in fact.

Under the MSP Act, GBMC became responsible for the costs of Bromwell's medical care when the state court adjudged it liable for medical malpractice. Under the terms of the state court judgment, the money owed to Bromwell's estate included the funds ultimately due to Medicare. This monetary liability was Netro's injury under the federal statute. That Netro was legally obligated to pass along the money to Medicare cannot erase the fact that GBMC owed it to her. *See* 42 U.S.C. 1395y(b)(2)(B)(ii) ("A primary plan's responsibility for such payment may be demonstrated by a judgment . . . .").

Step back for a moment from the complex world of Medicare payments, and imagine more mundane litigation: If Plaintiff Pam borrows something from Lender Lisa, and Defendant Dan steals it, Pam obviously has standing to recover from Dan. Her injury is not erased by the fact that the recovery will ultimately end up in Lisa's hands. The same logic applies here. Medicare paid for treatment that Bromwell received. It later became apparent that GBMC was responsible for those payments, and a state court ordered it to pay Netro. Her independent legal obligation to pass along those funds to Medicare does not defeat her standing.

GBMC objects that it *did* pay Netro, satisfying her claim and leaving her uninjured. But standing is established by the facts alleged in the complaint. *See Haro v.*

6

*Sebelius*, 747 F.3d 1099, 1108 (9th Cir. 2014) ("We consider whether the elements of Article III standing . . . were satisfied at the time the complaint was filed."). At the time the complaint was filed, GBMC had not yet paid Netro and her injury was intact. And while it is true that GBMC's prompt payment is relevant to resolving the merits of this case, *see infra* Part III, it cannot be said that it mooted the case. The MSP Act authorizes double recovery. To hold that any defendant can moot an enforcement action by writing a check as soon as a complaint is filed would dismantle the statute. No plaintiff would have any incentive to bring suit in the first place, and the government's ability to recoup conditional payments would be hobbled.

In the end we are left with a simple question: Is a plaintiff injured when a defendant was obligated under law to pay for her medical care but didn't? The sound answer is yes.

### B.

Netro also properly invoked a derivative injury: the government's recoupment interest assigned to a Medicare beneficiary by the MSP Act.

The Supreme Court has explained that "the assignee of a claim has standing to assert the injury in fact suffered by the assignor," and that the federal government may partially assign its claims by statute. *Vermont Agency of Nat. Res. v. U.S. ex rel. Stevens*, 529 U.S. 765, 773 (2000) (holding that private relators have standing to recover government funds under the False Claims Act). Without this kind of partial assignment, parties invoking qui tam statutes such as the False Claims Act would lack Article III

7

standing, rendering a dead letter the oldest and most well-established private enforcement provisions in Anglo-American law.

Just as in *Stevens*, the government's injury in this case "is beyond doubt." *Id*. at 771. GBMC owed Medicare $157,730.75. And just as in *Stevens*, the plaintiff "has a concrete private interest in the outcome of the suit"—the amount Netro would receive if she prevailed. *Id*. at 772. When combined with Congress's intent to authorize Medicare beneficiaries to collect funds paid by Medicare on their behalf, it is clear that the MSP Act "can reasonably be regarded as effecting a partial assignment of the Government's damages claim." *Id*. at 773. Qui tam or not, partial assignment of government claims fits into a long tradition of courts entertaining suits by assignees and subrogees. *See id*. at 773-74 (collecting authorities). For those reasons, suits under both the False Claims Act and the MSP Act alike fall within the "cases and controversies of the sort traditionally amenable to, and resolved by, the judicial process." *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 102 (1998).

The dissent contends that in the MSP Act, Congress did not intend to partially assign its damages even to Medicare beneficiaries. To whom, then, did it intend to partially assign its undisputed interest? To this the dissent essentially answers: to no one. But this declares that Congress indulged in a patently meaningless act—i.e., of passing a provision with no practical effect, just for the heck of it. Just as courts should not use their Article III powers to draft an advisory opinion, we should not rush to impute to Congress the drafting of a purely advisory provision.

While the MSP Act may lack the long history the Supreme Court relied on in the qui tam context, *see Stevens*, 529 U.S. at 774, other reasons also support standing here. Netro represents a Medicare beneficiary. She is the person closest to the event that made GBMC responsible for reimbursing Medicare. In order to control costs, Medicare provided such individuals with an incentive to help the agency recover funds. In cases such as this, Medicare will often not even know that it could recover money. Netro and other similarly situated plaintiffs are therefore often in a better position to recover on behalf of Medicare than the government itself.

Six circuits have found that not all private individuals have standing to bring suit under the MSP Act because it is not formally a qui tam statute. *See In re Avandia Marketing, Sales Practices & Products Liability Litig.*, 685 F.3d 353 (3d Cir. 2012); *Woods v. Empire Health Choice, Inc.*, 574 F.3d 92 (2d Cir. 2009); *Stalley ex rel. United States v. Orlando Regional Healthcare Sys., Inc.*, 524 F.3d 1229 (11th Cir. 2008); *Stalley v. Methodist Healthcare*, 517 F.3d 911 (6th Cir. 2008); *Stalley v. Catholic Health Initiatives*, 509 F.3d 517 (8th Cir. 2007); *United Seniors Ass'n v. Phillip Morris USA*, 500 F.3d 19 (1st Cir. 2007). We agree. The dissent contends that the above circuits held that there was no intent on Congress's part to assign Medicare damages claims to private plaintiffs. *See* Dis. Op. at 14. This statement is incorrect. The dissent simply conflates the undisputed consensus that the MSP Act is not a formal qui tam provision with a wholly illusory consensus that the statute cannot effect any partial assignment. No such consensus exists.

None of the above cases was brought by the Medicare beneficiary on whose behalf Medicare made conditional payments. In fact, those decisions often assume that a Medicare beneficiary would have standing. *See, e.g., Woods*, 574 at 97 (2d Cir. 2009) ("Woods's evidence, even if considered, can establish only that he has standing to pursue an action to recover the amounts he alleges to have been improperly paid by Medicare for medical care that he personally received."). That assumption aligns with the many circuits who have treated beneficiary standing as a given. *See, e.g.*, *Stalley*, 509 F.3d at 527 ("Congress contemplated that Medicare beneficiaries could recover double damages to vindicate their private rights when their primary payers fail to live up to their obligations, even if Medicare has made a conditional payment of the beneficiaries' expenses."); *see also Manning v. Utilities Mut. Ins. Co.*, 254 F.3d 387, 394 (2d Cir. 2001); *Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. & Sw. Areas Health & Welfare Fund*, 656 F.3d 277, 279 (6th Cir. 2011).

The Supreme Court made clear in *Spokeo* that a plaintiff does not "automatically satisf[y] the injury-in-fact requirement whenever a statute grants a person a statutory right and purports to authorize that person to sue." 136 S. Ct. at 1549. And properly so. But *Spokeo* concerned reputational harms untethered from any concrete injury, private or public. And critically, *Spokeo* did not involve the government recoupment interest present here. The dissent suggests that *Spokeo* effectively struck down all non-qui tam private enforcement provisions that involve a government recoupment interest. But the *Spokeo* decision never spoke in such broad and apocalyptic terms, and indeed remanded that case for a much more particularized inquiry. *See Robins v. Spokeo, Inc.*, 867 F.3d

10

1108 (9th Cir. 2017) (holding on remand that plaintiff had standing), cert. denied, 138 S. Ct. 931 (2018).

Ours is a narrow holding. Not just anyone can wander in off the street and avail themselves of the MSP Act's private cause of action. Were we to hold, however, that Netro, as the representative of a Medicare beneficiary, lacked standing even under the circumstances here, it is not clear that any party besides the government could bring suit under the MSP Act. That would essentially render Congress's express provision of the private cause of action null and void. It could also throw into serious question any non qui tam private cost recoupment action authorized by Congress across the board. With all respect, our good friend in dissent fails to acknowledge the staggering reach of its position. We are reluctant to absolutely prohibit the government from assigning its interests outside the qui tam context, even to a narrow class of plaintiffs and in an area vital to congressional efforts at cost control. We decline to issue such a sweeping constitutional decision here.

III.

Having established that Netro had standing to bring this suit, we now consider the merits of her claim. Whether GBMC "failed" to pay is a simple matter of statutory construction.

GBMC became responsible for conditional payments on the day the state court issued its final judgment. Under Maryland law, a properly revised final judgment effectively supersedes the prior judgment. *See Yarema v. Exxon Corp.*, 503 A.2d 239, 250 (Md. 1986) ("[W]hen a motion under Rule 2-535(a) to revise a final judgment is filed

11

within thirty days and the circuit court in fact revises the judgment, and there has been no intervening order of appeal, the prior judgment loses its finality and the revised judgment becomes the effective final judgment in the case."). Netro received the funds owed to Medicare 37 days after the revised final state court judgment. That delay hardly constitutes a "fail[ure]" to pay under the MSP Act.

To fail is "[t]o be deficient or unsuccessful; to fall short of achieving something expected or hoped for." *Black's Law Dictionary* (10th ed. 2014). There cannot be a failure to pay when there has been payment. Netro would have us transform the statute to read "unreasonable delay." But this we cannot do. While there might at some point be a delay of such length that it would amount to a failure, that is not at all this case.

Netro argues that the delay began in July 2016, when the state court entered its initial judgment. That argument misreads Maryland law, which says that in the case of a revised judgment, "the prior judgment loses its finality." *See Yarema*, 503 A.2d at 250. But even if we were to start the clock in July, it is not apparent that GBMC violated the MSP Act. Again, GBMC ultimately paid Netro, who was then obligated to pay Medicare. And much of the delay she complains about was due to the state court's consideration of the appropriate judgment amount, not any evasion by GBMC. To the contrary, during that period GBMC showed its intention to pay by asking for information it thought necessary to transfer funds to Bromwell's estate. This is hardly the kind of recalcitrance Congress had in mind when it created a private action for double damages. *Cf. Humana Med. Plan*, 832 F.3d 1229 (outright refusal to reimburse payments made by Medicare Advantage Organization); *Bio-Med. Applications of Tennessee, Inc. v. Cent. States Se. &*

12

*Sw. Areas Health & Welfare Fund*, 656 F.3d 277 (6th Cir. 2011) (illegal termination of coverage after a patient was diagnosed with end-stage renal disease).

Finally, Netro asks us to adopt a 60-day rule that would leave any primary plan vulnerable to suit exactly 60 days after becoming responsible for reimbursing Medicare. We decline to do so. The statutory text does not support any specific deadline, nor does Netro's attenuated rationale—relying on a different statutory provision that authorizes Medicare to charge interest on conditional payments after 60 days. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). And in any event, counting from the proper date of final judgment, GBMC's payment was well within Netro's proposed deadline.

## IV.

For the foregoing reasons, the judgment of the district court is

*AFFIRMED*.

TRAXLER, Circuit Judge, dissenting:

In *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016), the Supreme Court held that even when a statute purports to give a plaintiff the right to sue for damages, the plaintiff must demonstrate that *it was actually harmed by the conduct it challenges* in order to establish Article III standing to sue on its own behalf. Because the Estate's complaint does not allege it was harmed by the failure of the Greater Baltimore Medical Center (hereinafter, "the Hospital") to pay for Bromwell's medical care or to reimburse the government for its payment, *Spokeo* plainly requires our holding that the Estate has not established standing to sue. I believe the majority errs in holding to the contrary.

I also believe there is error in the alternative holding that the Estate actually was not required to establish standing in its own right because Congress effected a *partial assignment* of the government's right of action to Medicare beneficiaries when it created a private right of action in the Medicare Secondary Payment Act ("MSP Act"). All six circuits to address the issue have held, for persuasive reasons, that Congress did *not* intend to partially assign its Medicare damages claim to private plaintiffs and that private plaintiffs must therefore establish standing on their own behalf in order to bring private actions under the MSP Act. The sound reasoning these courts have employed applies just as well to Medicare beneficiaries as it does to other private plaintiffs. Nevertheless, without even discussing these reasons – or undertaking any significant statutory analysis whatsoever – the majority simply concludes ipse dixit that Congress *did* make a partial assignment of its own damages claim to Medicare beneficiaries. I agree with the other six circuits that have addressed this issue that the creation of the MSP Act's private right

14

of action did not constitute a partial assignment of the government's damages claim to private plaintiffs.

## I.

Enacted in 1980, the MSP Act makes Medicare insurance secondarily responsible for expenses covered by group health insurance, a workmen's compensation plan, or under an automobile, liability, or no fault insurance policy. *See* 42 U.S.C. § 1395y(b)(2). However, Medicare may pay up front for such expenses when the primary plan has not paid promptly or cannot reasonably be expected to do so. *See* 42 U.S.C. § 1395y(b)(2)(B)(i). If Medicare makes such conditional payments, the plan responsible for primary payment is required to reimburse Medicare. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii). A Medicare beneficiary also must reimburse Medicare if (and only if) the beneficiary receives payment from the primary plan. *See* 42 U.S.C. § 1395y(b)(2)(B)(ii).

As originally enacted, the MSP Act entitled the government to sue any entity that was primarily responsible for paying the expenses and collect double statutory damages. *See* 42 U.S.C. § 1395y(b)(2)(B)(iii). In 1986, Congress added a private right of action entitling a private party to those same double damages from a primary plan that "fails to provide for primary payment (or appropriate reimbursement)." Pub. L. No. 99-509, § 9319, 100 Stat. 1874 (1986) (codified as amended at 42 U.S.C. § 1395y(b)(3)(A)).

In this case, the Estate brought such a private cause of action against the Hospital on November 21, 2016. The facts alleged in its complaint that relate to standing were quite simple: Medicare made conditional payments of $157,730.75 to the Hospital for

15

Bromwell's medical care and treatment; the Estate then brought a medical malpractice lawsuit against the Hospital and ultimately obtained a judgment against the Hospital for $389,014.30 on October 31, 2016, establishing the Hospital's liability for the conditional payments previously made by Medicare; but even after receiving written notification that Medicare had made the conditional payments, the Hospital (in the three weeks since the final judgment was obtained) had "failed to provide primary payment or reimbursement of any of the medical expenses conditionally paid by the federal Medicare program."[1] J.A. 8. The Estate, in its Prayer for Relief, sought judgment against the Hospital in the amount of $315,461.50 "being 'an amount double' the amount due to the federal Medicare program," plus attorneys' fees, interest, and costs. J.A. 13.

In the district court, the Hospital moved to dismiss the Estate's claim for lack of federal jurisdiction under Federal Rule of Civil Procedure 12(b)(1) or, in the alternative, for summary judgment under Rule 56. In support of a facial challenge under Rule 12(b)(1), the Hospital argued that the Estate's complaint did not establish standing to bring this action because the Estate had not alleged any harm from the Hospital's purported failure to reimburse Medicare.[2] In this regard, the Hospital specifically noted

---

[1] The complaint alleged that the Hospital is a "primary plan" within the meaning of MSP Act because it carries a policy of liability insurance, including a self-insured plan, that provides coverage for damages incurred as a result of the Hospital's negligence.

[2] Indeed, it is uncontested that on December 7, 2016, after the institution of this suit, the Hospital paid the Estate the entire amount of the judgment, which included the amount owed to Medicare.

16

that "[t]he Estate does not allege it made conditional payments on Medicare's behalf, nor has Medicare sought reimbursement of the conditional payments from the Estate." J.A. 37. Alternatively, the Hospital contended it was entitled to summary judgment because the Hospital had not "failed" to reimburse Medicare since it had promptly paid the judgment on December 7, 2016.

The Estate opposed the motion. Regarding standing, the Estate argued that Congress intended to provide a private cause of action to beneficiaries when Medicare had paid for their care conditionally and a liable primary payer had not paid. Alternatively, the Estate argued that it *had* suffered a concrete injury insofar as the Hospital had not paid any portion of the tort judgment at the time suit was filed. The Estate also maintained, regarding the merits, that payment was untimely and that, in any event, payment to the Estate could not satisfy the Hospital's obligation to reimburse Medicare. *See Humana Med. Plan v. Western Heritage Ins. Co.*, 832 F.3d 1229, 1239-40 (11th Cir. 2016) (holding that payment from primary plan into trust pending dispute between primary plan and Medicare beneficiary did not extinguish primary plan's duty to reimburse Medicare).

The district court did not address the jurisdictional question of whether the Estate lacked standing to bring its claim. Rather, it adjudicated the suit on its merits, granting summary judgment to the Hospital on the basis that the Hospital did not "fail" to reimburse the government, within the meaning of the statute.

II.

17

The Estate now appeals, arguing that the district court erred in granting summary judgment against it. The Hospital, although it prevailed on the merits below, continues to argue primarily that the district court erred in failing to dismiss the case for lack of standing and in failing to recognize that it had no jurisdiction to address the merits of the Estate's claim. In my view the Hospital is correct.

A.

Article III gives federal courts jurisdiction only over "[c]ases" and "[c]ontroversies." U.S. Const. art. III, § 2, cl. 1. "One essential aspect of this requirement is that any person invoking the power of a federal court must demonstrate standing to do so." *Hollingsworth v. Perry*, 570 U.S. 693, 704 (2013). In the absence of standing, a district court "has no power to adjudicate and dispose of a claim on the merits." *Southern Walk at Broadlands Homeowner's Ass'n v. Openband at Broadlands, LLC*, 713 F.3d 175, 185 (4th Cir. 2013).

To survive a facial challenge to standing – meaning one that does not dispute the facts alleged – "the plaintiff must clearly allege facts demonstrating each element" of standing. *Spokeo*, 136 S. Ct. at 1547 (alteration and internal quotation marks omitted); *see Kenny v. Wilson*, 885 F.3d 280, 287 (4th Cir. 2018); *see also Friends of the Earth, Inc. v. Laidlaw Envtl. Servs.*, 528 U.S. 167, 180 (2000) ("[W]e have an obligation to assure ourselves that [the plaintiff] had Article III standing *at the outset of the litigation*." (emphasis added)). To do so, a plaintiff must allege "that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant and that the injury fairly can be traced to the challenged action and is likely to

18

be redressed by a favorable decision." *Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*, 454 U.S. 464, 472 (1982) (citation and internal quotation marks omitted). To support standing, injury caused by the challenged standing must be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks omitted).

Critically, the Supreme Court recently clarified the meaning of "concrete and particularized" in the standing context, noting that "concrete" and "particularized" are separate requirements that both must be satisfied for standing to be established. *See Spokeo*, 136 S. Ct. at 1548. The Court further explained that for an injury to be concrete, "it must actually exist"; in other words, it must be "real, and not abstract." *Id.* (internal quotation marks omitted). Indeed, the Court made clear that absent an actual or threatened injury of that type, a plaintiff cannot establish standing, *even when a statute purports to give it the right to sue for damages*. *See id.* at 1550 (holding that plaintiff had established standing to bring suit for damages under the Fair Credit Reporting Act of 1970 (FCRA) only if he had alleged an injury that was concrete); *see also Dreher v. Experian Info. Sols., Inc.*, 856 F.3d 337, 346 (4th Cir. 2017) (holding plaintiff failed to establish standing in FCRA action for damages when he showed only "a statutory violation divorced from any real world effect"). Because the lower court in *Spokeo* had failed to appreciate the distinction between the "particularized" and "concrete" requirements, the Court remanded for further consideration of the standing issue. *See Spokeo*, 136 S. Ct. at 1550.

19

Application of these principles in this case demonstrates that the Estate failed to establish standing. I will explain why I believe that to be the case and then I will briefly discuss the majority's contrary analysis.

B.

There is no doubt of course that the *government* would have standing to seek reimbursement of the money it paid for Bromwell's medical care. As the Estate concedes, however, and as every circuit to address the question has held, an action under § 1395y(b)(3)(A) is not a *qui tam* action; a private plaintiff suing under that MSP Act sues only on its own behalf, not on behalf of the government. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d 353, 359 n.9 (3d Cir. 2012) (collecting cases). Accordingly, the private plaintiff must establish standing in its own right in order to proceed under that statute. *See Stalley v. Catholic Health Initiatives*, 509 F.3d 517, 519, 521-27 (8th Cir. 2007).

To determine whether the Estate itself has alleged standing, it goes without saying that we must first identify the putatively illegal conduct that the complaint challenges. Here, the alleged illegal conduct – and the statutory basis for the claim for double damages – was the Hospital's failure either to "provide primary payment . . . of any of the medical expenses conditionally paid by the federal Medicare program" or to "reimburse[]" the government for those conditional payments. J.A. 8. But the complaint here did not allege that the Hospital's failure – to that point – to make primary payment for the treatment or reimburse the government harmed the Estate *in any way*.

20

The Hospital's failure to pay for Bromwell's treatment did not harm the Estate initially because in the absence of another payer, the government paid for her care. Since the Estate had no obligation to reimburse the government so long as the Hospital did not pay the Estate, the Estate was not injured by the Hospital's not having paid. *Cf. Wheeler v. Travelers Ins. Co.*, 22 F.3d 534, 538 (3d Cir. 1994) (holding that since Medicare had paid her medical expenses, plaintiff had not established any injury that would support standing in suit against primary insurer under state insurance laws).

Nor does the complaint allege that the Estate would have benefited had the Hospital paid the Estate the amount of the government's conditional payments. After all, any "entity that receives payment from a primary plan" that has been demonstrated to be responsible for making that payment is obligated to reimburse the government for the conditional payments the government made. 42 U.S.C. § 1395y(b)(2)(B)(ii); *see* 42 C.F.R. § 411.24(h) (providing that a beneficiary who receives a primary payment "must reimburse Medicare within 60 days"). The complaint does not allege that the Estate was excused from that obligation here.[3]

C.

---

[3]    For the first time, at oral argument, the Estate contended that had the Hospital paid the Estate or reimbursed the government, the Estate would have been entitled to be reimbursed for procurement costs under 42 C.F.R. § 411.37 for prosecuting the tort suit against the Hospital. However, because the complaint did not allege that the Estate bore any costs that it would be entitled to be reimbursed for under the regulation, the Estate did not establish standing on that basis.

The majority holds for two reasons that the complaint established standing: the majority contends first that the Estate alleged an injury to its own interests, and second, that the Estate was authorized to sue to remedy the government's injury.

1.

Regarding its first point, the majority makes little or no attempt to explain how the Hospital's failure to make primary payment or reimburse the government for its payment had any effect on the Estate that was "real, and not abstract." *Spokeo*, 136 S. Ct. at 1548 (internal quotation marks omitted). Rather, the majority simply *states* that the "*monetary liability* [established in the Estate's tort judgment against the Hospital] was [the Estate's] injury under the federal statute." Maj. Op. at 6 (emphasis added). But a tort judgment in one's favor is not an injury. In fact, any harm to the Estate from the Hospital's failure to pay for Bromwell's care was negated *before the Estate ever obtained the tort judgment*, when the government stepped in and paid for the treatment, leaving the Estate with no obligation other than to turn over any subsequent payment made by a primary plan to the Estate.

In lieu of explaining how the Estate could have been harmed by the Hospital's failure to pay when the government stepped in to pay for Bromwell's treatment, the majority points to a hypothetical that it asserts is analogous to the facts the Estate alleges: "If Plaintiff Pam borrows something from Lender Lisa, and Defendant Dan steals it, Pam obviously has standing to recover from Dan." Maj. Op. at 6. However, far from supporting the conclusion that the Estate alleged any injury from the Hospital's nonpayment, the majority's analogy simply highlights what appears to me to be a gap in

22

the analysis. To the extent the theft in the majority's hypothetical actually harmed Pam, *it is because it left her obligated to replace the thing she borrowed*. But the absence, at the outset of this case, of a comparable obligation on the Estate to reimburse the government is the very reason the Estate alleged no harm here. When it paid for her care, the government prevented harm to Bromwell and the Estate, and neither the majority's hypothetical or its other analysis accounts for that.

2.

As for the alternative holding that a Medicare beneficiary has standing to bring a private action to remedy an injury *to the government*, *see* Maj. Op. at 7 ("Netro also properly invoked a derivative injury: the government's recoupment interest assigned to a Medicare beneficiary by the MSP Act."), I would simply note that all six of the circuit courts of appeal to address the issue have concluded that a plaintiff suing under the statute sues only to remedy his own injury, not the government's. *See In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 685 F.3d at 359 n.9 (collecting cases). In determining that Congress did not intend to partially assign its own damages claim to private plaintiffs, those courts have relied on factors such as the fact that (1) the language of the statute "purports to give a substantive right to individuals *qua* individuals, not as private attorneys general or assignees of a public right," *Catholic Health Initiatives*, 509 F.3d at 522; *see Woods v. Empire Health Choice, Inc.*, 574 F.3d 92, 98-99 (2d Cir. 2009); *Stalley v. Methodist Healthcare*, 517 F.3d 911, 918 (6th Cir. 2008); (2) "the MSP [Act] does not indicate that a private party will necessarily share any recovery with the Government," *Woods*, 574 F.3d at 99; *see Methodist Healthcare*, 517 F.3d at 918-19; and

23

(3) the statute "lacks any provisions giving the government the right to control the action." *Catholic Health Initiatives*, 509 F.3d at 522; *see Woods*, 574 F.3d at 99-100; *see Methodist Healthcare*, 517 F.3d at 918.  It has been noted as well that Congress did not have a compelling incentive to make a partial assignment of the government's damages claim to Medicare beneficiaries because Congress likely expected in 1986 that Medicare beneficiaries would be able to establish standing to bring suit against their primary payers to remedy their own interests, even after Medicare has made conditional payment.  *See Catholic Health Initiatives*, 509 F.3d at 526-27.  I would interpret the statute in just this way for all of these reasons, and I have not seen any reason to call this analysis into question.[4]

The majority correctly points out that none of the cases in which the courts held that the creation of the private right of action was not a private assignment were cases "brought by the Medicare beneficiary on whose behalf Medicare made conditional payments."  Maj. Op. at 10.  But I can see no plausible argument for the suggestion that Congress intended to partially assign its damages claim to certain private plaintiffs but not to others, and I see no basis for any such conclusion.

---

[4]     My friends in the majority suggest that interpreting the MSP Act only to create a private right of action as opposed to a partial assignment of the government's damages claim means that Congress passed a meaningless provision "just for the heck of it."  Maj. Op. at 8.  But that is plainly incorrect.  No one doubts that Congress anticipated that by creating a private right of action, it would enable plaintiffs to recover damages under the statute.  I simply believe that Congress's understanding that plaintiffs such as the Estate could prove an injury sufficiently concrete for standing purposes is not viable after *Spokeo*.

In support of its view that Medicare beneficiaries need not establish standing in their own right, my friends in the majority note that several courts of appeal have assumed or appeared to assume (pre-*Spokeo*) that Medicare beneficiaries would automatically have standing to bring private actions to remedy the government's injury. *See* Maj. Op. at 10. But those courts' assumptions were plainly not based on the belief that the statute effectively assigned part of the government's interest to Medicare beneficiaries. Rather, they were based on the (pre-*Spokeo*) view that although Congress made no such assignment, Medicare beneficiaries can establish standing to sue on their own behalf. *See*, *e.g.*, *Catholic Health Initiatives*, 509 F.3d at 522 (explaining that the MSP Act "purports to give a substantive right to individuals *qua* individuals, not as private attorneys general or assignees of a public right").[5] In light of that fact, it is hardly surprising that the only circuit to address facts similar to ours post-*Spokeo* held that a Medicare-beneficiary plaintiff failed to establish standing when he did not allege he suffered any injury himself. *See Gucwa v. Lawley*, 2018 WL 1791994, at \*4 (6th Cir. Apr. 16, 2018) (unpublished).

I recognize that Congress's belief that Medicare beneficiaries would be able to prove standing in their own right may have contributed to Congress's decision not to partially assign the government's right of action to private plaintiffs. And Congress may wish to revisit its decision in light of *Spokeo*. But we have no authority ourselves to

---

[5] These pre-*Spokeo* assumptions about whether Medicare beneficiaries can automatically establish standing of course are of little relevance to us now.

make a partial assignment to private plaintiffs that Congress never intended to make. Rather, we must apply current standing law to the statute that Congress actually enacted.

III.

In sum, the Estate failed to meet its burden of alleging that the Estate suffered real-world harm from the Hospital's failure to pay for Bromwell's care. In the absence of any allegation of actual harm to the plaintiff, *Spokeo* plainly dictates that the Estate lacks standing and the district court lacked jurisdiction to adjudicate the merits of its claim. For these reasons, I respectfully dissent from the majority's decision to affirm the district court's judgment for the Hospital on the merits. I would vacate the judgment and remand for dismissal of the complaint under Rule 12(b)(1) for lack of standing.